STATE OF NEBRASKA, APPELLEE, V. BOBBY H. BLAKELY,
APPELLANT.
420 N.W.2d 300

Filed March 11, 1988.   No. 87-353.

Gregory M. Schatz of Stave, Coffey, Swenson, Jansen & Schatz, P.C., for appellant.

Robert M. Spire, Attorney General, and Mark D. Starr, for appellee.

HASTINGS, C.J., WHITE, SHANAHAN, and FAHRNBRUCH, JJ., and HANNON, D.J.

SHANAHAN, J.

Bobby H. Blakely appeals from his conviction in a bench trial for possession of methamphetamine in violation of Neb. Rev. Stat. § 28-416(3) (Cum. Supp. 1986). Blakely argues that the district court committed reversible error in not suppressing certain physical evidence, including the contraband methamphetamine, which, over Blakely's objection at trial, was received into evidence.

Blakely moved for suppression of physical evidence, claiming that the officers did not have probable cause to arrest Blakely without a warrant, and, therefore, any evidence obtained from Blakely was the result of an unreasonable search and is constitutionally inadmissible evidence. Neb. Const. art. I, § 7; U.S. Const. amend. IV. The dispositive background for Blakely's arrest was presented at the hearing on Blakely's suppression motion. See Neb. Rev. Stat. § 29-822 (Reissue 1985) (suppression of physical evidence).

At 3:45 p.m. on September 11, 1986, Sgt. Daniel McGovern, a member of the vice and narcotics unit of the Douglas County Sheriff's Department, received a telephone call from a confidential source, who provided information about a methamphetamine sale which was going to take place. Before the September 11 call, the informant had not supplied information to the Douglas County Sheriff's Department. McGovern had never spoken to the previously unknown informant. As far as the record reflects, the informant was a private citizen rather than a source paid by law enforcement to obtain information about possible criminal activity. During the telephone conversation with McGovern, the informant related that a man and woman had approached the informant at a party on the previous evening and offered to sell methamphetamine to the informant. On September 11 the couple had recontacted the informant and told him they could deliver the methamphetamine in 15 minutes. When the informant told McGovern that he did not want any arrest to occur near the home of the informant's mother, McGovern arranged to meet the informant at Christie Heights Park in Omaha. At that meeting, it was decided to direct the drug suspects to Hitchcock Park, six blocks from Christie Heights

Park. Shortly after meeting McGovern, the informant contacted the suspects, instructing them to meet the informant in the parking lot at Hitchcock Park.

After an unspecified period of time, McGovern again called the informant from a public phone booth, although McGovern could not recall the location of that phone. During this third contact with the informant, sometime around 4 o'clock, McGovern received the informant's description of the suspects' clothing, appearance, and the type of car they would be driving, including information that the suspects drove a two-door tan Chrysler Cordoba with prestige license plates containing the word "Rugsy." In this telephone conference, the informant also told McGovern that the male suspect had a mustache and would be wearing a blue jean jacket and blue jeans, while the other suspect was described as a large female wearing a white shirt with a flower print, blue jeans, and sunglasses. After this third contact with the informant, McGovern, at about 4 p.m., placed telephone calls to police officers of the La Vista and Ralston Police Departments to ascertain the informant's reliability. The Ralston and La Vista officers told McGovern that the informant's past information to police had led to two arrests for violations of law concerning a controlled substance. McGovern testified that he did not know the location of the phone used to contact the La Vista and Ralston officers, but attested that he did speak by telephone with those officers concerning the informant. McGovern also testified that, shortly after the informant's telephone call, he quickly assembled two deputies from the vice and narcotics unit of the sheriff's department, Officers Wilson and Buglewicz, to assist him, because the delivery of the methamphetamine would occur approximately 15 minutes after the informant's call. McGovern then testified that, after giving Wilson the informant's description of the suspects, he and the two deputies went directly to Hitchcock Park, arriving sometime around 4:30 p.m.

The officers traveled in separate vehicles to Hitchcock Park, and, when they arrived, McGovern and Buglewicz remained in their cars a short distance from Hitchcock Park. Wilson, an undercover officer in an unmarked car, went into the park and,

using his radio, informed McGovern and Buglewicz that the suspects were already in the parking lot. In response to that radioed information, McGovern and Buglewicz came to the parking lot. The officers noted that the tan automobile with its prestige plates, the suspects' clothing, and the appearance of the suspects matched the description given by the informant. With their revolvers unholstered, the officers approached the parked Chrysler and identified themselves as police officers. The deputies then ordered the suspects to get out of the Chrysler. As characterized by McGovern, the suspects were "technically under arrest" at that point and were not "free to leave" the officers' presence. While McGovern was standing beside the car, he observed a small cellophane packet, containing a white powdery substance, on the Chrysler's console between its bucket seats. According to McGovern, packaging of that type was "commonly the way we see Methamphetamine packaged." Officer Wilson undertook a pat-down search of Blakely and found a metal compact case in Blakely's right pants pocket and three syringes in Blakely's clothing. The compact taken from Blakely contained 14 packets of methamphetamine. The officers then "formally" arrested Blakely and his female companion. Searching the Chrysler, Officer Wilson found a Marlboro cigarette box under the front seat on the passenger's side, where Blakely had been seated at the time of the officers' arrival. The cigarette box contained nine packets of methamphetamine.

Deputy Wilson's testimony conflicted with McGovern's testimony. According to Wilson, McGovern gave him the description of the suspects "around 4 o'clock" at the sheriff's office on 115th and Burke Streets in Omaha, after which the officers immediately departed for Hitchcock Park. The record does not disclose the distance from the sheriff's office to Hitchcock Park. Wilson followed McGovern en route to Hitchcock Park and recalled that McGovern made no stop before the officers arrived at that park. Wilson further testified that he entered Hitchcock Park to observe the suspects' car and, 3 minutes later, radioed McGovern and Buglewicz that the suspects were already located in the parking lot.

Deputy Buglewicz did not testify.

The district court overruled Blakely's suppression motion. At trial, with evidence substantially the same as that presented at the suppression hearing, the court sustained Blakely's objection to the admission of the cigarette box and its contents found under the passenger's seat of the Chrysler, but overruled Blakely's objection concerning the other items obtained by the officers when they found Blakely in the parking lot.

Blakely claims that the officers lacked probable cause for his arrest because the officers' information for the arrest was obtained from a previously unknown informant. If the arrest was unlawful, Blakely argues, then evidence seized from Blakely must be suppressed. To support his argument, Blakely asserts that Officer McGovern was not telling the truth concerning his verification of the informant's reliability and the events which occurred between the informant's telephone call to Officer McGovern and Blakely's arrest.

" ' "In determining whether a trial court's findings on a motion to suppress are clearly erroneous, the Supreme Court recognizes the trial court as the 'trier of fact' and takes into consideration that the trial court has observed witnesses testifying regarding such motion to suppress." ' " *State v. Vrtiska*, 225 Neb. 454, 459, 406 N.W.2d 114, 119 (1987). See, also, *State v. Copple*, 224 Neb. 672, 401 N.W.2d 141 (1987).

At a hearing to suppress evidence, the court, as the "trier of fact," is the sole judge of the credibility of witnesses and the weight to be given to their testimony and other evidence. See *State v. Dixon*, 222 Neb. 787, 387 N.W.2d 682 (1986). In reviewing a court's ruling as the result of a suppression hearing, the Supreme Court does not reweigh the evidence or resolve conflicts in the evidence. Cf. *State v. Wood*, 220 Neb. 388, 370 N.W.2d 133 (1985).

" 'In determining the correctness of a trial court's ruling on a motion to suppress, the Supreme Court will uphold the trial court's findings of fact unless those findings are clearly erroneous. . . .' " *State v. Vrtiska, supra* at 459, 406 N.W.2d at 119.

An exception to the warrant requirement for seizure and arrest of a person was recognized in *Carroll v. United States*, 267 U.S. 132, 158, 45 S. Ct. 280, 69 L. Ed. 543 (1925): "When a

man is legally arrested for an offense, whatever is found upon his person or in his control which it is unlawful for him to have and which may be used to prove the offense may be seized and held as evidence in the prosecution."

As further explained in *Chimel v. California*, 395 U.S. 752, 762-63, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969):

> When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. . . . In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction.

A valid search as an incident to an arrest without a warrant necessarily depends on the legality of the arrest itself. As provided in Neb. Rev. Stat. § 29-404.02 (Reissue 1985): "A peace officer may arrest a person without a warrant if the officer has reasonable cause to believe that such person has committed" a felony, or a misdemeanor under certain conditions not applicable to the present case. The key to a lawful arrest without a warrant is "reasonable" or probable cause that a person has committed a crime.

In *State v. Harding*, 184 Neb. 159, 164, 165 N.W.2d 723, 726 (1969), this court stated: "It is not necessary that an actual formal arrest occur before a search is undertaken as long as probable cause for arrest does exist prior to the search." In *Harding* we pointed out that the constitutional issue regarding a reasonable search, as an incident of a felony arrest without a warrant, depends on the presence or absence of probable cause for that arrest, that is, whether immediately before the search an officer has probable cause to believe that the person to be searched has committed a felony.

When a law enforcement officer has knowledge, based on information reasonably trustworthy under the circumstances, which justifies a prudent belief that a suspect is committing or has committed a crime, the officer has probable cause to arrest without a warrant. See, *State v. Roggenkamp*, 224 Neb. 914, 402 N.W.2d 682 (1987); *State v. Moore*, 226 Neb. 347, 411 N.W.2d 345 (1987); *State v. Nowicki*, 209 Neb. 640, 309

N.W.2d 89 (1981). See, also, *Beck v. Ohio*, 379 U.S. 89, 85 S. Ct. 223, 13 L. Ed. 2d 142 (1964); *Brinegar v. United States*, 338 U.S. 160, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949).

In *State v. Butler*, 207 Neb. 760, 301 N.W.2d 332 (1981), a private citizen, who apparently had no prior association with police, overheard individuals conspiring to rob the Bank of Valley on August 28, 1979, and later identified Butler as one of the parties overheard. The informant also supplied a description of the automobile to be driven by Butler in the robbery. The informant received no compensation or other consideration from police to provide the information. When the police, on the date of the planned robbery, observed Butler in the automobile previously identified by the informant, they approached the automobile and arrested Butler. In determining that probable cause existed for Butler's arrest, we held:

> [T]he record is clear that the informant actually overheard the parties conspiring to rob the bank. As we noted in *State v. Payne*, 201 Neb. 665, 670, 271 N.W.2d 350, 352 (1978), "An informant's detailed eyewitness report of a crime may be self-corroborating; it supplies its own indicia of reliability; and an untested citizen informant who has personally observed the commission of a crime is presumptively reliable." . . .
>
> . . . .
>
> In *State v. Drake* [224 N.W.2d 476 (Iowa 1974)], the Iowa court noted: "When considering the sufficiency of probable cause based on information supplied by an informant, it is important to distinguish the police tipster, who acts for money, leniency, or some other selfish purpose, from the citizen informer, whose only motive is to help law officers in the suppression of crime.
>
> . . . .
>
> "In the latter the rule of prior reliability is considerably relaxed for several reasons. In the first place the citizen informer has rarely had any earlier experience in reporting suspected criminal activity. Furthermore, unlike the professional informant, he is without motive to exaggerate, falsify or distort the facts to serve his own ends.

"Reliability still must be shown, but it may appear by the very nature of the circumstances under which the incriminating information became known. Any other rule would lead to the totally unacceptable result that public-spirited citizens interested only in law enforcement could seldom furnish information sufficient to establish probable cause." [224 N.W.2d at 478.] . . .

. . . We believe that in the instant case the information furnished by the informants, when taken as a whole in light of the underlying circumstances, must be said to have been reliable so as to create sufficient probable cause and justify the arrests made by the officers. Butler was arrested for conspiring to rob a bank. The underlying evidence was, in our opinion, sufficient to constitute probable cause.

207 Neb. at 763-65, 301 N.W.2d at 334-35.

Thus, in *State v. Butler, supra*, this court held that, to determine whether police had probable cause for a warrantless arrest based on information from an informant, the test is whether the information from the informant, when taken as a whole in the light of underlying circumstances, is reliable.

Blakely's appeal becomes a case of contraband and credibility. Blakely argues that Sergeant McGovern's testimony is incredible and discredited by contradictory testimony of his fellow officer, Deputy Wilson. The basis of Blakely's argument seems to be that McGovern, in his arrest-related travels around Omaha between the informant's call and the officers' convergence in the park, would have been moving at a speed approaching that of light. Also, Blakely contends that Wilson's contradicting McGovern renders McGovern's testimony untrustworthy. However, in view of the standard of review, this court does not resolve conflicts in or reweigh the evidence.

Blakely's case is similar to the situation in *State v. Butler, supra*. Nothing indicates that the informant, who contacted Sergeant McGovern, was anyone but a private citizen, that is, a source of information without payment or other consideration from police for the information supplied. According to that informant, persons were prepared to make an imminent and illegal delivery of a controlled substance, methamphetamine.

The officers had a detailed description from a person who had previously communicated information to police which led to arrests for violations of law governing controlled substances. The information about the prospective delivery eventually proved to be extremely accurate and trustworthy, as the officers realized, when they found Blakely in the tan Chrysler bearing the license plate "Rugsy," just as the informant had descriptively predicted. The suspects, with their wardrobe and physical features, matched the description given by the informant. The information communicated by the informant to McGovern, when taken as a whole in the light of the underlying circumstances, supplied probable cause for Blakely's arrest without a warrant. Since the arrest was lawful, the search of Blakely, which was an incident of a lawful arrest, was valid and resulted in constitutionally admissible evidence under the circumstances.

We cannot state that the district court was clearly erroneous in denying Blakely's motion to suppress. Additionally, the evidence which Blakely had unsuccessfully sought to be suppressed was admissible at trial over Blakely's objection that the evidence was obtained by an illegal search after an unlawful arrest.

AFFIRMED.