STATE OF NEBRASKA, APPELLEE, V. JERRY A. MARCO, APPELLANT.

432 N.W.2d 1

Filed November 18, 1988.   No. 87-886.

Casey J. Quinn for appellant.

Robert M. Spire, Attorney General, and James H. Spears for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

Jerry A. Marco appeals his jury convictions on three drug-related offenses and his concurrent 20-month to 5-year sentences on two of the charges. We vacate one sentence, reverse one conviction, affirm two convictions and one sentence, and remand for resentencing on one conviction.

The information charges that Marco did: count I, knowingly or intentionally acquire or obtain or attempt to acquire or obtain possession of a controlled substance, meperidine, by misrepresentation, fraud, forgery, deception, or subterfuge; count II, intentionally possess a controlled substance, Demerol, also known as meperidine; and count III, conspire with another person to acquire or attempt to acquire a controlled substance, Demerol, also known as meperidine, by fraud, contrary to Neb. Rev. Stat. §§ 28-418(1)(c) (Reissue 1985), 28-416(3) (Cum. Supp. 1986), and 28-202(1) (Reissue 1985), respectively, all of which are Class IV felonies.

Each offense carries a possible penalty of not more than 5 years' imprisonment and/or up to a $10,000 fine. Neb. Rev. Stat. § 28-105(1) (Reissue 1985). The sentences could be imposed consecutively.

In sentencing Marco, the trial judge found that the elements in count I were also contained in count III and "constitute one offense for purposes of sentencing." He then imposed concurrent 20-month to 5-year terms of imprisonment upon the defendant on counts II and III. Two days' credit on the sentences was given for Marco's time spent in jail awaiting final disposition of the case.

Marco's first two assignments of error claim that the trial court erred (1) in entering a conviction on the charge of conspiracy where no overt act was alleged in count III of the information and (2) by not properly instructing the jury in regard to an overt act requirement in a conspiracy charge.

Neb. Rev. Stat. § 29-2014 (Reissue 1985) provides:

> In trials for conspiracy, in cases where an overt act is required by law to consummate the offense, *no conviction shall be had unless one or more overt acts be expressly alleged in the indictment,* nor unless one or more of the acts so alleged be proved on trial; but other overt acts not

alleged in the indictment may be given in evidence on the part of the prosecution.

(Emphasis supplied.)

There is no overt act expressly alleged in count III of the information charging Marco with conspiracy. There is merely an allegation that the defendant "or another person with whom he conspired did commit an overt act." Section 29-2014 is resolute that a defendant may not be convicted unless the overt act is expressly alleged in the information. Since the conspiracy charge against Marco does not meet that necessary statutory requirement, Marco's sentence for conspiracy must be vacated, his conspiracy conviction set aside, and the charge dismissed.

Marco's four remaining assignments of error, rearranged and summarized, claim the trial court erred by: (1) failing to sustain the defendant's motion to suppress illegally seized evidence; (2) instructing the jury on aiding and abetting; (3) failing to instruct the jury on Marco's theory of defense; and (4) failing to adequately instruct the jury on the law and in misleading the jury by the instructions given. None of these assignments of error have merit.

On January 5, 1987, a female, identifying herself as being from a Dr. Soori's office, telephoned Michael Cordwin, a pharmacist at the LaVista Pharmacy in Sarpy County, Nebraska. The caller asked whether the pharmacy had 500, 50-mg. Demerol tablets in stock. Cordwin said that he did not, but that he would sell what he had in stock and obtain the balance within 2 days.

Thereafter, Cordwin telephoned Dr. Soori's office to verify the order. A female confirmed that she placed the call and that the prescription was legitimate. Cordwin could not recall if the caller or the female in Dr. Soori's office gave a name. He testified, however, that the voice of the caller and the voice of the female in Dr. Soori's office were the same.

At about 7 p.m. the same day, a woman resembling Cynthia Marcault went into the LaVista Pharmacy and asked if the prescription for a Frank Belt was ready. She produced a written prescription intended for Belt for 500, 50-mg. Demerol tablets, signed by Dr. Soori. As required by law, the prescription form contained a space for the patient's address. It was blank.

Cordwin inserted the address given to him by the woman who presented the prescription. The address was for the K mart Pharmacy in Bellevue, Nebraska, and had been written on the back of the prescription. Cordwin partially filled the prescription with 49 Demerol tablets. He told the woman that the remainder of the prescription would be ready by Wednesday, January 7.

Cordwin left a note and the Belt prescription for Ronald Degand, owner pharmacist of the LaVista Pharmacy. Degand called the state board of pharmacy. He asked if he could legally dispense the number of Demerol pills in the prescription. In addition, Degand called Dr. Soori's office. Melody Karnes, a registered nurse employed by Dr. Soori since November 1984, said she was familiar with Dr. Soori's patient, Frank Belt.

Karnes testified that Dr. Soori prescribed 500 Demerol tablets for his patient every 2 weeks. Typically, Belt would call and request the prescription. Karnes would verify it with Dr. Soori and then call K mart Pharmacy in Bellevue and place the order for the prescription. Dr. Soori would sign a prescription for Belt, and it would be mailed to the K mart Pharmacy.

Karnes related that Belt, on January 5, 1987, requested a refill of his Demerol prescription. Karnes said she wrote the prescription and when Dr. Soori came in, he signed it. Karnes placed the order for the prescription with K mart Pharmacy. She said she laid the written prescription in a pile to be mailed that night. In addition to Karnes, Dr. Soori also employed a part-time bookkeeper and a medical technician named Kammie Smith.

Karnes testified she never phoned the LaVista Pharmacy about someone picking up a prescription for 500 Demerol tablets for Frank Belt. She said she never removed the prescription from Dr. Soori's office or gave it to anyone. Karnes testified she did not know either Marco or his codefendant, Cynthia Marcault.

After Degand talked with Karnes, he telephoned the State Patrol. Before an officer arrived, Degand received a phone call from a female who identified herself as "Kammie" from Dr. Soori's office. "Kammie" asked Degand if the prescription for Belt was ready. Degand told her it was partially filled on

Monday and the rest of the pills were on order and would be in on Wednesday.

Approximately 10 minutes after the conversation with "Kammie," State Patrol Sgt. Paul R. Wagner arrived at the pharmacy to talk to Degand. At Sergeant Wagner's request, Degand called "Kammie" and told her that he could have the remainder of the Belt prescription ready in about an hour if that would help. "Kammie" said, "No, the Belts will pick it up tomorrow." "Tomorrow" was Wednesday, January 7.

About noon on January 7, 1987, while a State Patrolman, Robert Cooper, was stationed behind the prescription department, a male caller asked Degand if the Belt prescription was ready. Degand said it was and told the caller that a balance of $147 was owed on the prescription. The caller responded that "we" will be there shortly.

About 12:40 p.m., defendant's codefendant, Marcault, alighted from a maroon and white Chevrolet in front of the pharmacy and entered the store. The male driver, later identified as Marco, waited in the car. Marcault handed Degand the prescription bottle the pharmacy had partially filled on Monday. "Do you have the balance of the prescription filled and ready for Frank Belt?" she asked. Degand said he did and got the prescription. Marcault gave Degand three $50 bills. Degand introduced himself to Marcault and asked if she was Frank Belt's daughter. She responded, "No, I'm his sister." Marcault then left. Sergeant Wagner saw the Chevrolet stop in front of the pharmacy and saw Marcault get out and enter the store while Marco remained in the car. Wagner saw Marcault leave the store. He approached the vehicle and identified himself to Marco as a police officer. Outside the vehicle, Wagner conducted a pat-down search of Marco. Marco was told he and Marcault were under arrest for obtaining a controlled substance by fraud. Marco was then handcuffed. Wagner searched Marco's pockets and found a small plastic vial containing seven Demerol tablets.

We first examine whether Marco's motion to suppress evidence obtained by a search of Marco's person after his arrest should have been sustained by the trial court. In reviewing a court's ruling as the result of a suppression hearing, the

Supreme Court does not reweigh the evidence or resolve conflicts in the evidence. *State v. McCurry*, 228 Neb. 841, 424 N.W.2d 364 (1988). Cf. *State v. Wood*, 220 Neb. 388, 370 N.W.2d 133 (1985).

At a hearing to suppress evidence, the court, as the "trier of fact," is the sole judge of the credibility of witnesses and the weight to be given to their testimony and other evidence. *State v. Dixon*, 222 Neb. 787, 387 N.W.2d 682 (1986).

The Supreme Court will uphold the trial court's findings of fact in a suppression hearing unless those findings are clearly wrong. *State v. McCurry, supra*; *State v. Gibson*, 228 Neb. 455, 422 N.W.2d 570 (1988); *State v. Blakely*, 227 Neb. 816, 420 N.W.2d 300 (1988); *State v. Vrtiska*, 225 Neb. 454, 406 N.W.2d 114 (1987).

The record reflects that the search was made and controlled substances seized after a warrantless arrest of Marco. Marco argues there was no probable cause to arrest him, and, therefore, the subsequent search was unlawful.

The validity of a search, as an incident of a felony arrest without a warrant, depends on the presence or absence of probable cause for the arrest, that is, whether immediately before the search an officer has probable cause to believe that the person to be searched has committed a felony. *State v. Blakely, supra.*

When a law enforcement officer has knowledge, based on information reasonably trustworthy under the circumstances, which justifies a prudent belief that a suspect is committing or has committed a crime, the officer has probable cause to arrest without a warrant. *State v. Blakely, supra.* See, also, *State v. Moore*, 226 Neb. 347, 411 N.W.2d 345 (1987); *State v. Roggenkamp*, 224 Neb. 914, 402 N.W.2d 682 (1987); *Beck v. Ohio*, 379 U.S. 89, 85 S. Ct. 223, 13 L. Ed. 2d 142 (1964).

*Chimel v. California*, 395 U.S. 752, 763, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969), explains that when a lawful arrest is made, "it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction."

Evidence at the hearing to suppress controlled substances found on Marco's person after his arrest established that the

day before the arrest, owner pharmacist Degand had told Wagner that a prescription for 500 units of Demerol intended for one Frank Belt had been surreptitiously diverted from a medical doctor's office and presented to the LaVista Pharmacy by a person other than the patient for whom it was intended. Wagner knew that the prescription should have been presented to the K mart Pharmacy. He knew that the prescription had been partially filled at the LaVista Pharmacy and delivered to a woman on January 5, 1987, and that the address she gave the pharmacist was not a residential, but rather a commercial address. Wagner knew that the remainder of the prescription was to be picked up at the LaVista Pharmacy shortly before Marco was arrested. According to trial testimony, Wagner also knew that shortly before the arrest, a male had called the LaVista Pharmacy and asked whether the Belt prescription was ready. The male caller said "we" will be after the prescription. Wagner saw that Marco was the driver of the car that brought Marcault to the LaVista Pharmacy. There, she unlawfully obtained Frank Belt's prescription. Through a radio message and prearranged visual signal with another patrolman, who watched Marcault obtain the remainder of the Belt prescription, Wagner knew before Marco's arrest that the prescription had been obtained by Marcault, who was not authorized to obtain it.

Following a hearing, the trial judge overruled the defendant's motion to suppress evidence seized from Marco. At trial, Marco again objected to the introduction of the evidence seized from him because he claimed there was no lawful arrest. That objection was overruled and the evidence received at trial. Considering the evidence at the suppression hearing and at the trial, we cannot say the trial judge was clearly wrong in receiving the evidence seized from Marco at trial.

We next consider Marco's claim that it was error to instruct the jury on aiding and abetting. The instruction given tracked NJI 14.12. An aiding and abetting instruction is usually proper where two or more parties are charged with commission of the offense. See *State v. Gau*, 182 Neb. 114, 153 N.W.2d 298 (1967).

Both Marcault and Marco were charged with knowingly or

intentionally acquiring a controlled substance by misrepresentation, fraud, deception, or subterfuge. The defendant argues that there has to be a principal offender in order to aid and abet and that both of the defendants were charged as principal offenders, so there could be no aiding and abetting.

Neb. Rev. Stat. § 28-206 (Reissue 1985) provides, "A person who aids, abets, procures, or causes another to commit any offense may be prosecuted and punished as if he were the principal offender." See, *State v. Schreck*, 224 Neb. 650, 399 N.W.2d 830 (1987); *State v. Bennett*, 219 Neb. 601, 365 N.W.2d 423 (1985).

> "Aiding and abetting involves some participation in the criminal act and must be evidenced by some word, act, or deed. No particular acts are necessary, nor is it necessary that any physical part in the commission of the crime is taken or that there was an express agreement therefor. Mere encouragement or assistance is sufficient."

*State v. Schreck, supra* at 652, 399 N.W.2d at 831-32; *State v. Bennett, supra*.

From the evidence in this case, a jury could find beyond a reasonable doubt that Marco, on January 7, 1987, aided and abetted Marcault in obtaining meperidine, a controlled substance, by misrepresentation, fraud, deception, or subterfuge, from the LaVista Pharmacy. The evidence is undisputed that Marco provided $147 for the prescription and that he drove Marcault to the pharmacy to pick up the prescription. The jury could infer from the evidence that it was Marco who called the pharmacy and asked if the Frank Belt prescription was ready to be picked up. There was evidence from which it could be concluded that neither the defendant nor Marcault was authorized to have Frank Belt's prescription filled. These facts and inferences alone warrant the giving of an aider and abettor instruction. Marco's objection to the instruction has no merit.

In his next assignment of error, the defendant claims that the district court committed reversible error by refusing to instruct the jury on the defense of obtaining and possessing a controlled substance pursuant to a valid prescription. Section 28-416(3)

provides: "A person knowingly or intentionally possessing a controlled substance . . . unless such substance was obtained directly or pursuant to a valid prescription or order from a practitioner while acting in the course of his or her professional practice . . . shall be guilty of a Class IV felony." Neb. Rev. Stat. § 28-405 (Cum. Supp. 1986) identifies meperidine, the "scientific" term for Demerol, as a Schedule II controlled substance.

There is no evidence in the record that the seven Demerol tablets found on Marco's person when he was arrested were issued pursuant to a valid prescription. In regard to the Demerol tablets intended for Frank Belt, Marcault intentionally and knowingly obtained those through misrepresentation, fraud, deception, or subterfuge. By asking for Frank Belt's prescription and by saying she was his sister, Marcault represented that she was obtaining the prescription for Frank Belt and that she was authorized to do so when, in fact, none of those representations were true.

It is the duty of the trial court, upon request of the accused, to instruct the jury upon any valid defense if there is credible evidence to support it. See, *State v. Clayburn*, 223 Neb. 333, 389 N.W.2d 314 (1986); *State v. Pearson*, 220 Neb. 183, 368 N.W.2d 804 (1985); *State v. Reeves*, 216 Neb. 206, 344 N.W.2d 433 (1984). However, the trial court is not required to give an instruction where there is insufficient evidence to prove the facts claimed. *State v. Clayburn, supra*; *State v. Reeves, supra*; *State v. Prim*, 201 Neb. 279, 267 N.W.2d 193 (1978).

The last assignment of error claims that the jury instructions, as a whole, failed to adequately state the law, misled the jury, and failed to cover the issues at trial, resulting in prejudicial error to the defendant.

Jury instructions or the failure thereof may be evaluated from the totality of the circumstances. See *Kentucky v. Whorton*, 441 U.S. 786, 99 S. Ct. 2088, 60 L. Ed. 2d 640 (1979), *reh'g denied* 444 U.S. 887, 100 S. Ct. 186, 62 L. Ed. 2d 121.

The evidence against Marco on counts I and II of the information is overwhelming, and the trial court properly instructed the jury on those two counts. In determining the validity of Marco's convictions on counts I and II from the

totality of the circumstances, we find beyond a reasonable doubt that erroneously instructing on and submitting to the jury count III charging Marco with conspiracy was harmless error.

All of the instructions on counts I and II, when read together and taken as a whole, correctly state the law, do not mislead, and adequately cover the issues involved. Therefore, there was no prejudicial error. See, *State v. Rincker*, 228 Neb. 522, 423 N.W.2d 434 (1988); *State v. Ryan*, 226 Neb. 59, 409 N.W.2d 579 (1987); *State v. Threet*, 225 Neb. 682, 407 N.W.2d 766 (1987). Marco's assignment of error as to jury instructions is without merit.

Defendant's sentence on count III is vacated, his conviction is reversed, and the charge of conspiracy is dismissed. Marco's convictions on counts I and II and his sentence on count II are affirmed. The cause is remanded for sentencing on count I.

AFFIRMED IN PART, REVERSED IN PART, AND IN
PART REMANDED FOR FURTHER PROCEEDINGS.