STATE OF NEBRASKA, APPELLANT, V. WILLIAM G. VERMUELE, APPELLEE.
453 N.W.2d 441

Filed March 30, 1990.   No. 89-1350.

Charles W. Campbell, York County Attorney, for appellant.

Kimberly D. Mueller, of Jeffrey, Hahn & Hemmerling, P.C., for appellee.

FAHRNBRUCH, J.

The York County Attorney appeals a district court ruling suppressing evidence relating to cocaine found in a wallet belonging to the defendant, William G. Vermuele. This appeal was brought for review before a single judge of the Supreme Court pursuant to Neb. Rev. Stat. §§ 29-824 et seq. (Reissue 1989). The suppression order of the district court for York County is reversed.

In determining the correctness of a trial court's ruling on a motion to suppress, the Supreme Court will uphold the trial court's findings of fact unless those findings are clearly erroneous. *State v. Juhl, ante* p. 33, 449 N.W.2d 202 (1989). In determining whether a trial court's findings on a motion to suppress are clearly erroneous, the Supreme Court recognizes the trial court as the trier of fact and takes into consideration that the trial court has observed witnesses testifying regarding such motion to suppress. *Id.*

It is a well-established rule that on questions of law the Supreme Court has an obligation to reach a conclusion independent of that reached by the trial court. *State v. Wren, ante* p. 291, 450 N.W.2d 684 (1990). The rule applies in appeals brought under §§ 29-824 et seq.

Pursuant to the 4th and 14th amendments to the U.S. Constitution and article I, § 7, of the Nebraska Constitution, a citizen has a right to be free from an unreasonable search and seizure. If police have acted without a search warrant, the State has the burden of proof that the search was conducted under circumstances substantiating the reasonableness of such search and seizure. *State v. Juhl, supra; State v. Vrtiska,* 225 Neb. 454, 406 N.W.2d 114 (1987).

In Vermuele's case, there was no search warrant. The State maintains that the search and seizure of the defendant's wallet containing cocaine residue was permissible under the "automobile exception" to the warrant requirement or as evidence obtained in a search pursuant to a lawful arrest.

Police officers who have lawfully stopped an automobile and who have probable cause to believe that contraband is concealed somewhere within it may conduct a warrantless search of the vehicle that is as thorough as a magistrate could

authorize by warrant. *United States v. Ross*, 456 U.S. 798, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982). This "automobile exception" to the fourth amendment's warrant requirement, established in *Carroll v. United States*, 267 U.S. 132, 45 S. Ct. 280, 69 L. Ed. 543 (1925), applies to searches of vehicles that are supported by probable cause to believe that the vehicle contains contraband. In this class of cases, a search is not unreasonable if it is based on objective facts that would justify the issuance of a warrant, even though a warrant has not actually been obtained. See *Carroll, supra.*

A review of the evidence in Vermuele's case reveals that there was probable cause not only for the officers to stop the vehicle in which the defendant was riding, but also to search it. In reaching those conclusions, it necessarily follows that the undisputed objective facts in Vermuele's case would justify the issuance of a search warrant.

At the hearing on the defendant's motion to suppress, two city of York police officers testified that in approximately October 1987, the York Police Department began an ongoing investigation concerning trafficking in controlled substances by Vermuele. The investigation was initiated after one of the officers had attended a drug intelligence meeting with a Hamilton County deputy sheriff and the Nebraska State Patrol. The officer also learned that Vermuele had been arrested in Polk County for possession of cocaine. The deputy sheriff informed the York police officer that Vermuele was actively engaged in trafficking in controlled substances, mainly cocaine. The second York police officer testified he was also involved in the ongoing investigation concerning Vermuele's "bringing drugs into York, Nebraska."

On the evening of December 30, 1988, an anonymous caller on a Crimestoppers line informed the York Police Department that he had personally overheard Vermuele make arrangements with the defendant's coworkers to sell them cocaine when Vermuele came to work the next evening at 7:30 at Consolidated Pet Foods (Consolidated). The informant reported that approximately 70 percent of the employees at Consolidated had cashed their checks and would be waiting for Vermuele. At that time, according to the Crimestoppers caller, the defendant

would sell them 2 to 3 ounces of 86-percent pure cocaine. The informant further reported that Vermuele had been selling a minimum of 2-ounce quantities of cocaine on a weekly basis to his fellow employees and that the defendant was a major source of "incoming cocaine [and] methamphetamine."

The Crimestoppers caller advised York police that Vermuele lived in Polk, Nebraska, drove a 1975 black Chevrolet Monte Carlo with the Nebraska license plate number 41-D653, and worked at Consolidated. The informant also gave the police a general description of the defendant, including his race, sex, birth date, height, weight, and hair and eye color. The caller said that the defendant was generally accompanied by James T. Haith of Central City, Nebraska. The informant also gave police a general description of Haith, including various vital statistics, and a description of Haith's automobile.

Approximately one-half hour after the Crimestoppers call was received by the police, York Police Officer Roger Wolfe stopped a black Chevrolet Monte Carlo with a license plate matching the description given by the informant. Vermuele was driving the vehicle, and Haith was a passenger. Wolfe testified that his stop was precipitated by a computer check that revealed the license plates on defendant's car were improper. However, a subsequent check of the car's registration showed the plates had been registered to the Monte Carlo that day and had not yet been entered on the computer. Wolfe no longer detained Vermuele and Haith. At the time of Officer Wolfe's stop, he was not aware of the Crimestoppers call that had been made to the York Police Department.

In following up on the Crimestoppers call, an independent investigation conducted by York police officers confirmed the descriptions and vital statistics of Vermuele and Haith as given by the Crimestoppers caller and their employment at Consolidated. York police previously had observed Haith driving a vehicle that was somewhat similar to the description given by the informant. Officer Wolfe testified his investigation, conducted after the Crimestoppers call, revealed that the defendant had a cocaine addiction problem and in 1988 had been convicted of cocaine possession in Polk County. Vermuele was incarcerated in the York County jail for that

crime. This information was supplied to Officer Wolfe by Vermuele's jailer, to whom the defendant admitted his cocaine addiction. Obviously, the York County jailer would be a reasonably trustworthy source of information.

On the evening of December 31, 1988, police waited for the defendant and Haith near Consolidated on Division Avenue in York, Nebraska. About 7:23 p.m., officers observed a vehicle, known by one of the officers to be Haith's, approaching Consolidated. In addition, the vehicle in several material respects matched the description of Haith's vehicle given by the informant. The officers stopped the vehicle and obtained identification from the driver, Haith, and his passenger, Vermuele. After removing identification from his wallet, Vermuele placed his wallet on the dashboard of the vehicle. The officers conducted a search for weapons and contraband. In the search, marijuana and drug paraphernalia were found on the defendant. A hash pipe was found under the driver's seat, where Haith had been seated. Both the defendant and Haith were arrested.

Vermuele's wallet was removed from the vehicle and taken to the police station, where it was searched. Inside the wallet, police discovered two razor blades. A substance on the razor blades was subsequently determined to be cocaine. Vermuele was charged with possession of cocaine, a violation of Neb. Rev. Stat. § 28-416(3) (Cum. Supp. 1988), a Class IV felony; possession of marijuana under 1 ounce, § 28-416(6), an infraction; and possession of drug paraphernalia, Neb. Rev. Stat. § 28-441 (Reissue 1989), an infraction.

Defendant moved to suppress the evidence obtained in the search and seizure of his person and property. Vermuele claimed the evidence was obtained in violation of his rights under the 4th and 14th amendments to the U.S. Constitution and article I, §§ 3 and 7, of the Nebraska Constitution.

After the hearing on the motion to suppress the evidence found in Vermuele's wallet, the trial court stated:

The arrest and search of the defendant on December 31, 1988 rest upon the anonymous telephone call received by the York Police Department on December 30, 1988. None of the other independent information gained by the police

department after the call and before the arrest and search corroborated or verified the "crime" and would not have supported probable cause for a warrant. Nor does the independent information establish a modus operandi.

No magistrate in Nebraska would have issued an arrest warrant or a search warrant on the anonymous call or upon the independent information or upon the combination of both.

No probable cause existed in the totality of the circumstances to arrest and search the defendant and his wallet on December 31, 1988 at 7:30 p.m., in York, Nebraska. "Probable cause" of Article I, Section 7 Nebraska Constitution blocks the arrest and search of a person upon an anonymous telephone call.

Police officers must have a particularized and objective basis for suspecting the person stopped of criminal activity. The assessment of the totality of circumstances includes all of the objective observations and considerations, as well as the suspicion drawn by a trained and experienced police officer by inference and deduction that the individual stopped is or has been or is about to be engaged in criminal behavior.

The protection afforded by the fourth amendment varies in different settings. "[A]n individual's expectation of privacy in a vehicle and its contents may not survive if probable cause is given to believe that the vehicle is transporting contraband." *United States v. Ross*, 456 U.S. 798, 823, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982). Consequently, "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Id.* at 825. The analysis of a warrantless search under *Ross* requires this court to address two issues, (1) the validity of the stop and (2) the existence of probable cause to believe the vehicle contains contraband.

If the York police had probable cause to arrest Vermuele, the stop was lawful.

A peace officer may arrest a person without a warrant if the officer has reasonable cause to believe that such person has committed:

(1) A felony; or

(2) A misdemeanor, and the officer has reasonable cause to believe that such person . . . (c) may destroy or conceal evidence of the commission of such misdemeanor
. . . .

Neb. Rev. Stat. § 29-404.02 (Reissue 1985). When a law enforcement officer has knowledge, based on information reasonably trustworthy under the circumstances, which justifies a prudent belief that a suspect is committing or has committed a crime, the officer has probable cause to arrest without a warrant. *State v. Blakely*, 227 Neb. 816, 420 N.W.2d 300 (1988). See, also, *State v. Robinson*, 233 Neb. 729, 448 N.W.2d 386 (1989).

Vermuele points out that one of the police officers testified that he did not believe that he had probable cause to arrest the defendant. The validity of an arrest is premised upon the existence of probable cause, not the officer's knowledge that probable cause in fact does exist. *State v. Roach, ante* p. 620, 452 N.W.2d 262 (1990).

Vermuele had been previously convicted of cocaine possession and was the subject of an ongoing criminal investigation for drug trafficking. All of the information given by the Crimestoppers informant, except the actual possession of cocaine by the suspect, was verified by the officers and therefore proven trustworthy. In addition, the defendant was approaching Consolidated at the approximate time the Crimestoppers caller reported the drug sale would take place. Based on personal knowledge and information reasonably trustworthy under the circumstances, the York police had probable cause to believe that at least one of two felonies was being committed, i.e., possession of cocaine or possession of cocaine with intent to deliver. See § 28-416. The stop by the York police was lawful.

Next to be resolved is whether the York police had probable cause to believe that the automobile in which Vermuele was a passenger contained contraband. The scope of a warrantless search is not defined by the nature of the container in which the contraband is secreted but, rather, by the object of the search and the places in which there is probable cause to believe that it

may be found. *United States v. Ross, supra.* If probable cause existed, any expectation of privacy in the vehicle or its contents would be subject to the authority of the officers to conduct a warrantless search, and consequently, the evidence found in Vermuele's wallet would have been erroneously suppressed. See, *United States v. Ross, supra*; *United States v. Johns*, 469 U.S. 478, 105 S. Ct. 881, 83 L. Ed. 2d 890 (1985).

Probable cause exists where facts and circumstances within an officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to warrant one of reasonable caution to believe that an offense has been or is being committed. *State v. Roach, supra.*

An officer need only have a reasonable belief, based on personal knowledge and other trustworthy information, that an offense has been or is being committed. *State v. Blakely, supra*; See, also, *United States v. Sokolow*, ____ U.S. ____, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989). The concept of probable cause is not readily, or even usefully, reduced to a neat set of legal rules. *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). "The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same—and so are law enforcement officers." *United States v. Cortez*, 449 U.S. 411, 418, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981).

Informants' tips, like all other clues and evidence coming to a policeman on the scene, may vary greatly in their value and reliability and must be weighed in the totality of the circumstances to determine whether probable cause exists. *Illinois v. Gates, supra.* The trial court concluded that " '[p]robable cause' of Article I, Section 7 Nebraska Constitution blocks the arrest and search of a person upon an anonymous telephone call." We have previously concluded, however, that the framers of the Nebraska Constitution intended that article I, § 7, provide no greater rights than those afforded a defendant by the 4th and 14th amendments to the U.S. Constitution. See *State v. Havlat*, 222 Neb. 554, 385

N.W.2d 436 (1986).

In *Illinois v. Gates, supra* at 225, police received an anonymous letter that described drug activity by the Gates couple, the letter concluding, " 'I guarantee if you watch them carefully you will make a big catch.' " The U.S. Supreme Court, commenting on the requirement of the credibility of anonymous informants, stated:

> [Anonymous] tips, particularly when supplemented by independent police investigation, frequently contribute to the solution of otherwise "perfect crimes." While a conscientious assessment of the basis for crediting such tips is required by the Fourth Amendment, a standard that leaves virtually no place for anonymous citizen informants is not.
>
> . . . The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed. *Jones v. United States,* 362 U.S. [257, 271, 80 S. Ct. 725, 4 L. Ed. 2d 697 (1960)]. . . .

*Illinois v. Gates, supra* at 237-39.

Given the totality of the circumstances, the officers had probable cause to believe that cocaine would be found in the vehicle in which defendant was a passenger. The Crimestoppers caller informed police he personally overheard Vermuele make plans to unlawfully deliver cocaine to a specific class of people in a specified amount at a specified time and place. An anonymous tipster's "explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles [the] tip to greater weight than might otherwise be the case." *Illinois v. Gates, supra* at 234. At the time police stopped the vehicle in which the defendant was riding, it was headed, near the specified time, toward the place where the defendant was heard to say he would deliver the

cocaine. Before the stop, every facet of the information given by the Crimestoppers caller, except the actual possession by the defendant of the cocaine, had been personally verified by the officers, including a description of two vehicles Vermuele would likely be traveling in and the approximate time that the defendant would be going to Consolidated to make the cocaine sale and delivery. In addition, the officers knew that Vermuele had been a cocaine addict, that he had been found guilty of a cocaine possession charge in the past, and that he had been previously linked with the delivery of drugs in York County. Under the totality of the circumstances the officers had reasonable grounds to believe the remaining unverified bit of the informant's information to be true, that Vermuele would have cocaine in his possession. See, *Illinois v. Gates, supra*; *Draper v. United States*, 358 U.S. 307, 79 S. Ct. 329, 3 L. Ed. 2d 327 (1959). The trial court erred as a matter of law in concluding that the crime must be verified. There is no requirement that the "crime" itself be corroborated or verified in order to justify probable cause for a warrantless search or arrest. See, *Illinois v. Gates, supra*; *Draper v. United States, supra*; *State v. Dussault*, 193 Neb. 122, 225 N.W.2d 558 (1975).

Finally, Vermuele complains that although police officers had ample time between the Crimestoppers call and the stop of Haith's vehicle to obtain a search warrant, they failed to do so. It is questionable that there would have been probable cause to obtain a warrant without additional verification of the information given by the Crimestoppers caller. That could not take place until just before the police stopped the Haith vehicle in which the defendant was a passenger. Immediately before the stop, police officers observed the defendant proceeding to the place where the cocaine delivery was to take place, near the time and in a car described by the Crimestoppers caller. Vermuele's complaint that police officers were required to obtain a search warrant is without merit under the facts of this case.

Because, based upon probable cause, it was lawful for York police officers to stop the vehicle in which Vermuele was riding, to search the vehicle, and to seize the cocaine in the defendant's possession, it is unnecessary to address the State's contention that the cocaine was obtained pursuant to a valid arrest.

The trial court was clearly wrong in suppressing the evidence found in Vermuele's wallet.

REVERSED.