MARIE M. FOWLER, APPELLEE, v. BENSON F. BACHUS, APPELLANT.

139 N. W. 2d 213

Filed January 4, 1966. No. 36036.

Stoehr, Rickerson & Caporale, for appellant.

Abrahams, Kaslow, Story & Cassman and Robert C. Oberbillig, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

McCOWN, J.

At the trial of an action for personal injuries received by the plaintiff in an automobile accident, the court directed liability on the issue of negligence against the defendant, and the jury returned a verdict for the plaintiff for $1,000. The plaintiff's motion for a new trial was sustained, and the defendant has appealed from the order granting a new trial.

The injuries plaintiff complained of were to the cervical and lumbar areas of the back. These same two areas were involved in injuries received by the plaintiff in a previous automobile accident which occurred in January 1961. As a result of the first accident, a cervical disk was removed and the cervical vertebrae were fused. A resection of the disk in the interspace between the fourth and fifth lumbar vertebrae was also done, and the herniated disk was excised. This was not followed by fusion. The cervical surgery was performed in January 1962, and the lumbar surgery in February 1962.

In the second accident, which occurred on January 25, 1963, the plaintiff first complained about her neck or cervical area, and later about pain in her leg, which related to the back area. The neck area cleared up in a

short time, but on June 11, 1963, surgery was again performed at the identical interspace between the same two lumbar vertebrae as in the prior operation following the first accident. Further herniation of the disk was found and fragments of disk removed.

The plaintiff relies upon two grounds as justifying the trial court's action in granting the motion for a new trial. One involved the overruling of an objection to a question involving medical testimony. The other is that the amount of damages allowed by the jury was inadequate.

One of plaintiff's physicians testified that as a result of the January 1961 accident, and the operations which followed, it was his opinion that the plaintiff had somewhere between 30 percent to 35 percent permanent partial disability of the body as a whole. He also testified that the result obtained from the back operation done in February 1962, was a satisfactory result. Another of plaintiff's physicians testified that in March 1962, he wrote a letter opinion with reference to the results of the accident of January 1961, and stated: "The patient has a permanent partial disability of between thirty and forty per cent to the body as a whole."

Dr. Gross, an orthopedic surgeon who had examined the plaintiff on behalf of the defendant following the second accident, was asked the following question: "Well, Doctor, in connection with the testimony here, there has been testimony by the two treating doctors of the Plaintiff, Dr. Margules, who did all of the operations, the cervical, the first disk operation and the second disk operation, and by Dr. Ladwig, who also treated her on both of them, in reference to the percentage of disability of the body as a whole after the accident of January, 1961 but prior to the accident of January, 1963 that we are concerned with. Based upon your examination in this case and based upon the further fact that Dr. Margules placed her disability after the first accident and before the second accident at thirty to thirty-five per

cent of the body as a whole and Dr. Ladwig testified that her disability after the first accident and before the second accident or accident of January, 1963, that her disability, her permanent partial disability was thirty to forty per cent of the body as a whole, do you have an opinion as to whether or not there was a good result obtained in the first operation on her back in February, 1962?"

The objection to this question was: "Your Honor, I object to this, I don't think the Doctor has any foundation, there has been no foundation laid as to giving such an opinion; he hadn't examined her at that time. He certainly did not follow her after the treatment at that point and I don't believe he would be in a position to give such opinion." The objection was overruled; the witness answered: "Yes." He was then asked: "And what is that opinion, Doctor?" The answer was: "Well, if a person has that type of a disability they obviously have had a very poor result."

The plaintiff contends that this testimony violates the frequently quoted rule that the opinion of an expert witness which is predicated, in whole or in part, upon the opinions of other witnesses, whether lay or expert, is inadmissible. See, 20 Am. Jur., Evidence, § 791, p. 665; 2 Jones on Evidence (5th Ed.), § 421, p. 796. It was upon this ground that the trial court granted the motion for new trial.

While the general rule has been stated time and again, its application and interpretation have troubled American courts almost from the beginning. It is quite clear that a medical expert may base his opinion upon "facts" testified to by another expert, but it is ordinarily said that he may not generally base his opinion upon the "opinion" of another expert. VII Wigmore on Evidence (3d Ed.), § 1919, p. 14, states: "* * * there is no virtue in any test based on the mere verbal or logical distinction between 'opinion' and 'fact.' * * * the law takes no more special account of a logical difference between

'opinion'-testimony and 'fact'-testimony than between testimony by a short witness and testimony by a tall witness."

Again, II Wigmore on Evidence (3d Ed.), § 682, p. 810, states: "It is sometimes said that 'an opinion of an expert cannot be based upon opinions expressed by other experts'; but this is unsound. Keeping in mind that the ordinary distinction between 'fact' and 'opinion' has here no value, it will be seen that the basis for a hypothetical opinion may be either data observed or data inferred, and that inferred data presented by expert testimony may equally well become a part of the basis for a hypothetical question; * * *. There is no mysterious logical fatality in basing 'one expert opinion upon another'; it is done every day in business and in applied science." The pocket part supplement to this section at page 277 adds: "For that matter, 'in everyday trials factual opinions or conclusions of both lay and expert witnesses are utilized in hypothetical questions.'"

The cases cited in support of the rule, including the Nebraska cases cited by the plaintiff, almost invariably involve the assumption of a fact not testified to, or not determinable from the evidence, or a witness expressing an opinion not his own; all of which might be characterized as being generally within the hearsay rule. In some instances, the rule has been applied where the expert is asked to base his opinion upon the opinion of another expert covering the precise question upon which the opinion is expressed. This case fits none of these categories.

In this case, the testimony of plaintiff's doctors as to the percentage of disability of the body as a whole after the first accident and before the second, was the "opinion" or "inference" of those doctors as to an ultimate "fact." There was no conflicting evidence upon the issue, and the question presented as inferred data, the "fact" which the evidence tended to prove. In the circumstances here present, where the opinion of an ex-

pert medical witness becomes, in effect, a "fact" in the case, such an opinion may be included as a basis for a hypothetical question propounded to another expert, where it is not upon the precise question upon which the opinion is expressed.

As stated in 2 Jones on Evidence (5th Ed.), § 418, p. 790: "In any event, there is substantial support for the rule that, if the hypothetical question properly presents the fact which the evidence tends to prove, and does not call upon the witness to reconcile conflicting evidence or to pass upon the merits of the case, a wide range may be given by the court, and a liberal discretion allowed as to its form."

As this court stated in Chambers v. Chicago, B. & Q. R.R. Co., 138 Neb. 490, 293 N. W. 338: "If a hypothetical question, calling for expert skill or knowledge, is so framed as to fairly and reasonably reflect the facts proved by any of the witnesses in the case, it will be sufficient."

In any event, the objection that a question bases the opinion of one expert upon that of another necessarily must be to the form of the question itself, and also must be determinable from an inspection of it. The only objection made at the trial was a general one going to foundation. This court stated in Campbell v. City of North Platte, 178 Neb. 244, 132 N. W. 2d 876: "Review is limited where a general objection has been overruled. It reaches only an obvious flaw; otherwise specification is required. The purpose is to ease the burden on the trial court and to permit correction by the questioner."

It is obvious that upon specific and proper objection, the question here could have been rephrased to make the testimony clearly admissible. No objection was made by the plaintiff at the trial that the question called for an opinion based upon an opinion. It was not apparent from the question itself and a mere inspection of it would not establish that it called for an opinion upon an opin-

ion. The issue of the result of the first operation on the lumbar area of the plaintiff's back, as well as the issue of the plaintiff's condition after the first accident, was raised by the plaintiff, and the defendant was entitled to test the issue by the testimony of a qualified expert witness. The trial was over, verdict in, and judgment entered before any contention was made that the question here involved an opinion based on an opinion.

While the requirement of form might have been insisted upon if raised, the bill of exceptions indicates no substantial prejudice to the plaintiff. There was other testimony of Dr. Gross in the record that normally a good result in a lumbar disk operation has a disability of 10 percent, occasionally 15 percent, and also that the plaintiff's specific disability from the total cervical injury was 5 percent. He also testified, without objection, that the normal 10 percent or 15 percent disability resulting from a good lumbar disk operation was, in part, the basis for his statement that the plaintiff could not have had a good result in February 1962, if her doctors were believed on the percentage of disability that she had after the first accident.

In dealing with the admission of questions calling for expert medical opinion, much must be left to the discretion of the trial court; and its rulings will ordinarily not be revised unless they are plainly prejudicial to the rights of the excepting party. See King v. Belmore, 248 Mass. 108, 142 N. E. 911.

The plaintiff also contends that the amount of the damages allowed was clearly inadequate under the evidence. The trial court quite properly determined that the jury could have found that the damages, or part of them, were not the direct and proximate result of the second accident only, but resulted in whole or in part from the original accident and subsequent operations.

Where a verdict is directed against the defendant on the issue of negligence, the plaintiff is not relieved from

the burden of proving that the injuries were proximately caused by the negligence of the defendant, and the amount and nature of the damages. Cooper v. Hastert, 175 Neb. 836, 124 N. W. 2d 387.

The weight of the evidence and the credibility of witnesses are for determination by the jury. Under the circumstances in this case, the plaintiff has failed to establish prejudicial error in the record which will justify the granting of a new trial.

For the reasons stated, the action of the court in granting the motion for new trial was in error, and the order granting a new trial is vacated and the cause remanded with directions to reinstate the verdict of the jury and the judgment thereon.

REVERSED AND REMANDED WITH DIRECTIONS.