STATE OF NEBRASKA, APPELLEE, v. CHRIS VAN EGMOND, APPELLANT.

293 N. W. 2d 74

Filed June 3, 1980. No. 42836.

Walter Matejka, for appellant.

Paul L. Douglas, Attorney General, and G. Roderic Anderson, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, MCCOWN, BRODKEY, WHITE, and HASTINGS, JJ., and COLWELL, District Judge.

WHITE, J.

The appellant was tried on a charge of assault and battery in the county court of Madison County, Nebraska, without a jury. The county court found the appellant guilty and sentenced him to a term of 3 months in the county jail. The appellant filed an appeal to the District Court for Madison County. The judgment and sentence were upheld. Appellant appeals.

Appellant raises two errors in this court: (1) The

trial court erred in admitting impermissibly sugges-
tive photographic evidence; and (2) The conviction
is not sustained by sufficient evidence.

The facts in the case believed by the trial court
would tend to show the following. On Saturday,
May 6, 1978, LaVerne Opkis, his wife, Ellen, and
Lawrence and Luane Kumm of Creighton, Nebraska,
drove to the city of Norfolk, Nebraska. They first
went to eat at a local pizza house at approximately 9
p.m. and, at 10 p.m., they drove to the Red Bull
tavern where they stayed until slightly before clos-
ing at about 1 a.m. Ellen Opkis was operating the
Opkis family automobile down Norfolk Avenue, the
main street of Norfolk. They passed the Red Arrow
tavern when a shopping cart was pushed from the
side of the street striking the front fender of the
automobile. Ellen Opkis stopped the car approxi-
mately 1 block away at a gasoline station on the
corner and they all got out of the car to view the
dent in the fender. The two men, LaVerne Opkis
and Lawrence Kumm, decided to walk back to the
Red Arrow to find out who caused the damage to the
car. There were several motorcyclists in front of
the tavern. LaVerne Opkis signaled one motor-
cyclist. He told the man, later identified in open
court by Opkis as his assailant, that someone had
pushed a shopping cart into his car. The appellant,
Chris Van Egmond, responded by asking LaVerne
Opkis what he could do about it. Then, while stand-
ing, but still on his motorcycle, he struck LaVerne
Opkis in the face with his fist, knocking him to the
ground. LaVerne Opkis testified that, while he was
lying on the pavement after being struck, the appel-
lant kicked him several times. Lawrence Kumm,
who was a witness to the incident, identified Chris
Van Egmond in court as the assailant. Ellen Opkis
and Luane Kumm stated that they saw LaVerne
Opkis walk down the block and engage in conversa-
tion with the appellant. Neither observed the appel-

lant strike Mr. Opkis but Mrs. Opkis did observe a fight going on. Both women came to the scene and engaged in conversation with the appellant, who was then standing over LaVerne Opkis. In court, they identified the appellant, Chris Van Egmond, as the person who had been standing over LaVerne Opkis. Shortly after LaVerne Opkis left to accost the appellant, Ellen Opkis, through the use of a CB radio, summoned the Norfolk police department. Although not in response to this call, Officers Kenneth Drahota and Herb Angell of the Norfolk police department were cruising down Norfolk Avenue and passed the scene. They testified that they had previously known Chris Van Egmond and that each could positively identify him as the person standing over LaVerne Opkis at the time. Appellant is described as 25 years old, 6 feet 2 inches tall, 200 pounds, a construction worker, and a member of the Jokers Wild Motorcycle Club.

The first assignment of error relates to a photographic lineup which took place at the Norfolk police department on May 9, 1978, by Officer Tom Higgenbotham, an investigator of the Norfolk police department. Officer Higgenbotham testified that he put together a photo lineup from the Norfolk police department photo file, including a photograph of the appellant. The Kumms and the Opkises were brought into a room and, although they knew the photographs were from police files, they were not permitted to view the police record or the reason for which any of the photographed persons had been arrested by the Norfolk police department. It was the identification made of Chris Van Egmond by the Opkises and Kumms to which appellant particularly objects. The trial court had the photographs before it, as we have. Generally, the photographs each portray a white male in his 20's with medium to long hair, and a combination of moustache and/or beard. The trial court was convinced that the photographs,

in themselves, were not impermissibly suggestive and we agree. The question, as raised by the appellant, is whether or not it was appropriate that the four witnesses should be permitted the identification process at the same time. Officer Higgenbotham testified that he first handed the lineup photographs to Lawrence Kumm and instructed him that the suspect could or could not be among them. Mr. Kumm identified the appellant. The photograph identified was not seen by LaVerne Opkis. The photographs were then handed to LaVerne Opkis who went through them and identified the appellant. It is entirely possible, according to the officer, that the women did see the photograph identified by their husbands. Mrs. Opkis and Mrs. Kumm examined the photographs together and identified the appellant as the assailant. No evidence or showing was in the record that the in-court identification was dependent on the photographic lineup, even assuming that all or any part of it was impermissibly suggestive. There is nothing to suggest that the photographic lineup, insofar as LaVerne Opkis and Lawrence Kumm were concerned, was impermissibly suggestive. While it may be the best practice, as suggested by the appellant's counsel, where there are two or more witnesses to require each to view the photographs separately out of the presence and hearing of the others, N. R. Sobel, *Eye-Witness Identification; Legal and Practical Problems* (1972), and *Hazards of Photoidentification,* 28 Okla. L. Rev. 858 (1975), the identification procedure used for Mrs. Opkis' and Mrs. Kumm's photographic identification was not impermissibly suggestive. Any suggestiveness of the identification procedure must be considered harmless error in view of the overwhelming identification of the appellant as the assailant. *Chapman v. California,* 386 U.S. 18 (1967). In the instant case, the appellant was identified as the assailant by six persons, including two police officers,

who each had an ample opportunity to identify him as the person at the scene. The first assignment of error is without merit.

Essentially, the testimony of the appellant and his witnesses was to the effect that Mr. Opkis, not the appellant, was the assailant. According to the appellant, LaVerne Opkis swung first and, if the appellant struck him at all, it was in self-defense. Another witness for the appellant claimed that it was he, and not the appellant, that probably struck Mr. Opkis. The injuries to Mr. Opkis were described by the trial court as serious. There was ample evidence to sustain the trial court's judgment of conviction.

Having noted in the presentence investigation a long history of assaults and violence, we cannot say that the sentence of 3 months in the county jail was excessive. The judgment and sentence are affirmed.

AFFIRMED.