STATE OF NEBRASKA, APPELLEE, V. ANTHONY W. COLEMAN, APPELLANT.
478 N.W.2d 349

Filed January 10, 1992.   No. 90-728.

Thomas M. Kenney, Douglas County Public Defender, and Brian S. Munnelly for appellant.

Don Stenberg, Attorney General, and Jim Elworth for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

SHANAHAN, J.

As the result of a jury trial, Anthony W. Coleman was convicted of possessing a controlled substance, "crack" cocaine, in violation of Neb. Rev. Stat. § 28-416(3) (Reissue

1989). In his pretrial motion to suppress the cocaine as physical evidence, see Neb. Rev. Stat. § 29-822 (Reissue 1989) (suppression of physical evidence obtained by unlawful search and seizure), Coleman claimed that the cocaine evidence was obtained through a warrantless and, contrary to the fourth amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution, an unreasonable search of an automobile in which Coleman was a passenger. After the district court overruled the suppression motion, Coleman objected to the cocaine as evidence at his trial and again raised the question concerning constitutional admissibility of the cocaine. Also, by a motion in limine, which was rejected by the district court, and a subsequent objection overruled during trial, Coleman sought to prevent the State's introducing in its case in chief testimony about Coleman's incarceration shortly before his arrest on the cocaine charge.

## THE SEARCH AND COLEMAN'S STATEMENT
*The Search.*

Around 9 p.m. on November 29, 1989, Officers Mark Lang and James Morgan of the Omaha Police Division were on a routine cruiser patrol northbound on 34th Avenue in Omaha when they observed a Buick Regal make an erratic turn from an east-west street onto 34th Avenue, cross the centerline of 34th Avenue, proceed astraddle the centerline toward the officers' cruiser in the northbound lane, and then continue southbound away from the cruiser. When the Buick crossed the centerline, "nearly colliding" with the cruiser, Officer Lang, who was driving the cruiser, had to "swerve to the right hand of the roadway to avoid collision with the [Buick]." Officer Lang turned the cruiser around, activated the cruiser's "overhead lights," and followed the Buick a short distance until the Buick pulled to the curb and the officers made a "traffic stop." There were three occupants in the Buick.

Officer Lang went to the driver's side of the Buick, where he contacted the driver, later identified as Ronald Branch. Officer Morgan was standing at the Buick's right rear quarter panel. Lang asked Branch "for his operator's license and the paper work for the vehicle." At that point, Lang smelled a "strong

odor of marijuana smoke" coming from inside the Buick and noticed that Branch "seemed a little bit hesitant and nervous at the time." When Branch was unable to produce an operator's license, he stated that his license might have been suspended.

After Lang smelled marijuana smoke and as a result of Branch's inability to produce an operator's license, Lang asked Branch to get out of the vehicle and performed a pat-down search of Branch for weapons. During Lang's inquiry concerning the marijuana odor, Branch stated that there was a "marijuana joint" in the car's ashtray and then pointed out the ashtray and joint to Lang.

During Lang's exchange with Branch, Officer Morgan asked that the passenger in the right front seat, subsequently identified as Jack Coleman, get out of the car, and conducted a pat-down search for weapons "for our own safety, beings that we were somewhat outnumbered." After searching Jack Coleman, Morgan asked the passenger seated in the right rear seat and thereafter identified as Anthony Coleman to step out of the car and contemporaneously instructed Jack Coleman to get into the back seat. Jack Coleman refused to enter the Buick and explained that his refusal was based on the fact that the police had not yet searched the area of the Buick's back seat.

As the result of a records check while at the scene, the officers learned that there was an active misdemeanor warrant for Branch's arrest and that his driver's license was under suspension. The officers then arrested Branch and, pursuant to that arrest, searched the Buick's back seat in conjunction with a standard "inventory search" of the Buick impounded on account of Branch's arrest. During the search of the Buick's rear seat area and immediately in front of the back seat which had been previously occupied by Anthony Coleman, Lang looked into "the rear ashtray that's mounted on the back of the front passenger's seat" and discovered a clear plastic baggie which contained "rocks of crack cocaine." Later, laboratory analysis verified that the contents of the baggie were "pieces of rock compound . . . identified as cocaine . . . the base form of cocaine, which is referred to as crack." In crack cocaine, "the hydrochloride portion of the [cocaine] molecule has been stripped away," leaving "close to 100 percent" purity of the

cocaine residue.

As a result of the search, the officers also arrested Jack Coleman and Anthony Coleman, who were transported to police headquarters with Branch.

*At Police Headquarters.*

As reflected in Lang's testimony at the suppression hearing, preparatory to interrogation at police headquarters, Lang administered the *Miranda* warning or admonition to Anthony Coleman. Lang then asked Coleman if he had any knowledge concerning the crack cocaine found in the Buick driven by Branch. At first, Coleman denied any knowledge of the cocaine. However, about 10 minutes into the interrogation, when Lang asked whether it was possible that either Branch or Jack Coleman placed the crack cocaine in the Buick's rear ashtray, Coleman, referring to the cocaine, said, "[I]t's mine," and further stated that he was "not going to play no games, you know, I'm an user, so you can go tell those other guys I fessed up." According to Lang, Coleman also stated that

> he [Coleman] had purchased the crack cocaine. He stated that his intentions were to use it, not to sell it, that he had just gotten out of the penitentiary . . . on the 19th of September [1989], and that he had heard that crack cocaine was a new thing and that it was a new thing to do.

> He stated that he had become scared during the traffic stop and had placed the crack cocaine in the ashtray, and the reason that he stated that he was admitting it was . . . that he didn't want to get Mr. Branch or his nephew, Mr. Jack Coleman, in trouble.

### COLEMAN'S TRIAL

As previously mentioned, the trial court denied Coleman's pretrial motion to suppress the crack cocaine as evidence in Coleman's jury trial. Through a motion in limine, Coleman's lawyer asked for exclusion of certain statements which Coleman made during interrogation by Lang, namely:

> I would move in limine prior to any evidence put on by the officers to ask the court to exclude a statement that Officer Lang says that Mr. Coleman made to him with regards to the fact that he had gotten out of the

penitentiary in September, September 19th of 1989, and then started using crack shortly afterwards.

While it may be relevant, I think that its possible prejudicial value under Nebraska Revised Statutes Rule 403 would be too much for a jury to put out of their mind.

. . . [M]y concern is the statement the officer makes saying, I got out of the penitentiary.

Thus, Coleman's motion in limine was based on Neb. Evid. R. 403, Neb. Rev. Stat. § 27-403 (Reissue 1989), which provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The trial court rejected Coleman's motion in limine and additionally commented that denial of the motion was "with the understanding [Coleman] is going to testify. Should that status change, then I might change my mind on the motion in limine also."

During the State's case in chief, and after Coleman's renewed objection that the seized crack cocaine, as previously challenged by the suppression motion, was constitutionally inadmissible, Lang testified that during interrogation of Coleman regarding the cocaine discovered in the Buick, Coleman said, "[I]t's mine. . . . I'm an user, so you can go tell those other guys [Branch and Jack Coleman] I fessed up." Concerning the cocaine discovered during the traffic stop, Lang's testimony also included Coleman's statements expressed during interrogation at police headquarters and previously recounted at the suppression hearing. The prosecutor then asked Lang whether Coleman had said anything else during the interrogation. To the preceding inquiry, Coleman's lawyer responded: "I object to any testimony regarding where Mr. Coleman was earlier in the fall prior to his arrest in November of 1989." After Coleman's objection was overruled, Lang testified: "[Coleman] had stated he had just gotten out of the penitentiary on the 19th of September [1989], and that he had heard that crack cocaine was a new thing and that it was a new thing to do."

## ASSIGNMENTS OF ERROR

Coleman's assignments of error may be distilled into the following: (1) The police officers' stopping the vehicle in which Coleman was riding was constitutionally unauthorized, and therefore, the cocaine discovered by the officers during that stop should have been suppressed as constitutionally inadmissible evidence obtained through an unreasonable search and seizure, and (2) the district court erred in allowing Lang "to testify that the Defendant had just been released from the penitentiary." Brief for appellant at 13.

## CONSTITUTIONALITY OF THE STOP

*Standard of Review.*

In determining the correctness of a trial court's ruling on a motion to suppress, the Supreme Court will uphold the trial court's findings of fact unless those findings are clearly erroneous. *State v. Blakely*, 227 Neb. 816, 420 N.W.2d 300 (1988). In determining whether a trial court's findings on a motion to suppress are clearly erroneous, the Supreme Court recognizes the trial court as the "trier of fact" and takes into consideration that the trial court has observed witnesses testifying regarding such motion to suppress. *State v. Blakely, supra.* . . . If police have acted without a search warrant, the State has the burden of proof that the search was conducted under circumstances substantiating the reasonableness of such search or seizure. *State v. Vrtiska*, 225 Neb. 454, 406 N.W.2d 114 (1987).

*State v. Abdouch*, 230 Neb. 929, 930, 434 N.W.2d 317, 319 (1989). Accord, *State v. Staten*, 238 Neb. 13, 469 N.W.2d 112 (1991); *State v. Juhl*, 234 Neb. 33, 449 N.W.2d 202 (1989).

*Constitutional Justification of the Search.*

Coleman contends that the officers' stopping the Buick in which he was a passenger violated the standard expressed in *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), concerning an investigatory stop by police. Also, Coleman argues that the officers, after observing the Buick's erratic movement, including its crossing the centerline of 34th Avenue into the lane of traffic occupied by the police cruiser

and nearly colliding with the cruiser, should have "followed the vehicle for a short distance in order to determine whether possible criminal behavior was present." Brief for appellant at 11. However, Coleman does not point out what would have been legally significant if the car caravan continued on 34th Avenue with the officers' cruiser in pursuit of the Buick driven by Branch.

In *Terry v. Ohio, supra* at 392 U.S. at 16, the U.S. Supreme Court stated:

> It is quite plain that the Fourth Amendment governs "seizures" of the person which do not eventuate in a trip to the station house and prosecution for crime—"arrests" in traditional terminology. It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has "seized" that person.

Additionally, "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." *Terry v. Ohio, supra* at 392 U.S. at 22. Thus, "under *Terry v. Ohio* . . . police can constitutionally stop and briefly detain a person for investigative purposes if the police have a reasonable suspicion, supported by articulable facts, that criminal activity exists, even if probable cause is lacking under the fourth amendment." *State v. Staten, supra* at 18, 469 N.W.2d at 116. Accord *State v. Twohig*, 238 Neb. 92, 469 N.W.2d 344 (1991).

However, further discussion about a "*Terry* stop" is unnecessary to resolve the constitutional issue of the cocaine's admissibility in Coleman's trial.

*A Search Incidental to Arrest.*

We resume our analysis by considering "probable cause" to arrest without a warrant, namely: "When a law enforcement officer has knowledge, based on information reasonably trustworthy under the circumstances, which justifies a prudent belief that a suspect is committing or has committed a crime, the officer has probable cause to arrest without a warrant." *State v. Blakely*, 227 Neb. 816, 821, 420 N.W.2d 300, 304

(1988). Accord, *State v. Twohig, supra*; *State v. Staten, supra*; *State v. Roggenkamp*, 224 Neb. 914, 402 N.W.2d 682 (1987).

The vehicle in which Coleman was a passenger made an erratic turn onto 34th Avenue, crossed the centerline of that public street occupied by an oncoming vehicle, and forced Officer Lang to take sudden and evasive action by sharply turning the cruiser from the path of the approaching vehicle and thereby avoiding a collision with the Buick carrying Coleman. Operation of the Buick violated at least one traffic statute in the "Nebraska Rules of the Road," see Neb. Rev. Stat. § 39-620 (Reissue 1988) (a vehicle shall be driven on the right half of the roadway), and was sufficient to provide the officers with an objective basis for the officers' reasonable or prudent belief that other Nebraska statutes may have been violated; for example, Neb. Rev. Stat. §§ 39-669 (Reissue 1988) (careless driving), 39-669.01 (Reissue 1988) (reckless driving), and 39-669.07 (Reissue 1988) (drunk driving or driving under the influence of a drug). Consequently, in Coleman's case, the officers had sufficient particularized and objective facts to stop the vehicle in which Coleman was riding, to issue a traffic citation to Branch for violating a Nebraska statute pertaining to proper operation of a motor vehicle, and to conduct further investigation into Branch's ability to safely operate a motor vehicle.

Moreover, the valid traffic stop led to discovery that the operator's license of the driver, Branch, was suspended and, hence, Branch's driving a motor vehicle subjected him to arrest for a violation of Neb. Rev. Stat. § 60-418 (Reissue 1988) (prohibition against a driver's operating a motor vehicle while the operator's driving privileges are suspended). Also, Branch was the subject of an outstanding arrest warrant and admitted that he was in possession of marijuana located in the Buick. Thus, the officers discovered the crack cocaine during their search of the Buick pursuant to a valid arrest of Branch. See *New York v. Belton*, 453 U.S. 454, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981) (when a law enforcement officer has made a lawful custodial arrest of an automobile's occupant, the officer may, as a contemporaneous incident of that arrest, search the automobile's passenger compartment and examine contents of

any container, whether open or closed, within the passenger compartment).

Additionally, the officers found the cocaine during their inventory search of the Buick impounded on account of Branch's arrest, an impoundment which is unchallenged in Coleman's case. See, *South Dakota v. Opperman*, 428 U.S. 364, 96 S. Ct. 3092, 49 L. Ed. 2d 1000 (1976) (an inventory search of an automobile impounded by police protects the automobile owner's property while in police custody, protects police against claims or disputes over lost or stolen property, and protects police from potential danger; hence, inventories pursuant to standard police procedures are reasonable); *Colorado v. Bertine*, 479 U.S. 367, 107 S. Ct. 738, 93 L. Ed. 2d 739 (1987) (inventory searches are a well-defined exception to the warrant requirement for a search; therefore, evidence discovered during a proper inventory search is constitutionally admissible); *State v. Stalder*, 231 Neb. 896, 438 N.W.2d 498 (1989) (evidence discovered during an inventory search of a vehicle is constitutionally admissible); *State v. Hill*, 214 Neb. 865, 336 N.W.2d 325 (1983) (evidence found by police without a warrant in an inventory search of a vehicle lawfully in police custody was constitutionally admissible). Cf. *State v. Dixon*, 237 Neb. 630, 467 N.W.2d 397 (1991) (constitutional admissibility of inventory items of property found on a defendant's person).

Therefore, the officers discovered the crack cocaine during a valid search of the vehicle in which Coleman was a passenger. Accordingly, Coleman's first assignment of error is without merit.

### TESTIMONY ABOUT COLEMAN'S INCARCERATION

Coleman contends that the district court should have sustained the motion in limine and subsequently excluded Lang's testimony which recounted Coleman's statement that he was discharged from the state penitentiary on September 19, 1989, just over 2 months before Coleman's arrest for the cocaine charge on November 29, 1989.

*Coleman's Motion in Limine.*

Coleman misperceives the nature and function of a motion in

limine, which were discussed in *State v. Tomrdle*, 214 Neb. 580, 585-86, 335 N.W.2d 279, 283 (1983):

A motion in limine is a procedural step to prevent prejudicial evidence from reaching the jury. Cf. *State v. Bennett*, [122] R.I. [276], 405 A.2d 1181 (1979). As explained in *Lagenour v. State*, 268 Ind. 441, 450, 376 N.E.2d 475, 481 (1978): "[I]t is not the office of a motion *in limine* to obtain a final ruling upon the ultimate admissibility of evidence . . . but is rather to prevent the proponent of potentially prejudicial matter from displaying it to the jury, making statements about it before the jury, or presenting the matter to a jury in any manner until the trial court has ruled upon its admissibility in the context of the trial itself." As noted in *Twyford v. Weber*, 220 N.W.2d 919, 923 (Iowa 1974): "It [the motion in limine] serves the useful purpose of raising and pointing out before trial certain evidentiary rulings the court may be called upon to make during the course of trial. . . . It is not a ruling on evidence and should not, except on a clear showing, be used to reject evidence. It adds a procedural step to the offer of evidence."

. . . As clearly pointed out in *State v. Garrett*, 183 N.W.2d 652, 655 (Iowa 1971): "[T]he very purpose of the motion in limine is to receive an advance ruling on anticipated objectionable material . . . . [A] denial of a motion in limine . . . cannot, in and of itself, constitute reversible error . . . . The reason is simple. The objectionable material has not yet reached the jury's ears. It may never reach the jury." In the same mode is the ruling in *Twyford v. Weber, supra* at 924, that "where the motion is denied and opposing counsel attempts to ask the questions challenged in the motion . . . a proper objection at that time is necessary to preserve the right to complain on appeal . . . . Stated otherwise, where the motion is denied the movant must base his complaint on the trial record."

In view of *Tomrdle*, we expressed in *State v. Cox*, 231 Neb. 495, 506, 437 N.W.2d 134, 142 (1989):

When a court overrules a motion in limine to exclude

evidence, the movant must object when the particular evidence, previously sought to be excluded by the motion, is offered during trial and cannot predicate error on the admission of evidence to which no objection was made when the evidence was adduced.

Thus, because overruling a motion in limine is not a final ruling on admissibility of evidence and, therefore, does not present a question for appellate review, a question concerning admissibility of evidence which is the subject of a motion in limine is raised and preserved for appellate review by an appropriate objection to the evidence during trial.

### *Coleman's "Objection."*

This brings us to the "objection" during trial to Lang's testimony about Coleman's incarceration in the penitentiary shortly before Coleman's arrest. In an effort to exclude Lang's testimony, Coleman's lawyer stated: "I object to any testimony regarding where Mr. Coleman was earlier in the fall prior to his arrest in November of 1989." Bearing in mind that Coleman's motion in limine was based on Neb. Evid. R. 403 and contained Coleman's apparent concession that his penitentiary confinement "may be relevant," was the objection during trial based on Rule 403? The objection, however, made no reference to Rule 403 or to the previously overruled motion in limine. Had Coleman withdrawn from his concession of relevancy, expressed in conjunction with his motion in limine, and at trial contended that testimony concerning his incarceration was irrelevant? Was Coleman's opposition to Lang's testimony a veiled invocation of the Nebraska Evidence Rules other than the rules concerning irrelevancy or the exclusion of relevant evidence pursuant to Neb. Evid. R. 403? Coleman's objection lacked not only a specified ground for inadmissibility of Lang's testimony, but also, in the objection's context at trial, provided no readily discernible basis for exclusion of Lang's testimony. Consequently, any ground or basis for Coleman's objection is open to reasonable and serious question.

Neb. Evid. R. 103(1)(a), Neb. Rev. Stat. § 27-103(1)(a) (Reissue 1989), provides that an appellant claiming reversible error as the result of admission of evidence must have made "a

timely objection . . . stating the specific ground of objection, if a specific ground was not apparent from the context . . . ." See, also, *Havlicek v. State*, 101 Neb. 782, 784, 165 N.W. 251 (1917) ("[i]t is the duty of counsel to make his [or her] objections so specific that the court may understand the point intended to be raised"); *State v. Todd*, 226 Neb. 906, 416 N.W.2d 13 (1987); *State v. Roggenkamp*, 224 Neb. 914, 402 N.W.2d 682 (1987).

One function of a proper objection is to direct the court's attention to questioned admissibility of particular evidence so that the court may intelligently, quickly, and correctly rule on the reception or exclusion of evidence. See, *State v. Bissonette*, 145 Vt. 381, 488 A.2d 1231 (1985); *Langenheim v. City of Seward*, 200 Neb. 740, 265 N.W.2d 446 (1978); *Fowler v. Bachus*, 179 Neb. 558, 139 N.W.2d 213 (1966); M. Graham, Handbook of Federal Evidence § 103.1 (3d ed. 1991); 21 C. Wright & K. Graham, Federal Practice and Procedure: Evidence § 5032 (1977). Thus, a true objection does not wander among the Nebraska Evidence Rules in the hope of eventually ending its odyssey at the doorstep of a particular rule of evidence. In seeking to exclude evidence, counsel must adhere to a basic and straightforward approach: Tell the court the reason why the evidence is inadmissible! At best, Coleman's lawyer expressed general opposition to Lang's testimony, but failed to express that opposition based on any of the Nebraska Evidence Rules, either by reference to the numerical identification of a particular rule within the Nebraska Evidence Rules or through use of language contained in an evidential rule which rendered Lang's testimony inadmissible. Notwithstanding Coleman's "objection" and its unspecified exclusionary ground and cryptic basis for inadmissibility of Lang's testimony about Coleman's incarceration, the State tilts at windmills built in Coleman's brief and embarks on various considerations for admissibility of Lang's testimony. Nevertheless, at the risk of condoning, or even inviting, slipshod practice and procedure for objections to evidence, but aware of Coleman's possible ineffective assistance of counsel claim on account of his lawyer's failure to specify a basis for excluding Lang's testimony, we treat Coleman's objection as one based on the ground that Lang's testimony was irrelevant,

i.e., "[e]vidence which is not relevant is not admissible." Neb. Evid. R. 402, Neb. Rev. Stat. § 27-402 (Reissue 1989).

"Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Neb. Evid. R. 401, Neb. Rev. Stat. § 27-401 (Reissue 1989).

> "There are two components to relevant evidence: materiality and probative value. Materiality looks to the relation between the propositions for which the evidence is offered and the issues in the case. If the evidence is offered to help prove a proposition which is not a matter in issue, the evidence is immaterial. What is 'in issue,' that is, within the range of the litigated controversy, is determined mainly by the pleadings, read in the light of the rules of pleading and controlled by the substantive law . . . .

> "The second aspect of relevance is probative value, the tendency of evidence to establish the proposition that it is offered to prove. . . ."

*State v. Baltimore*, 236 Neb. 736, 740, 463 N.W.2d 808, 812 (1990) (quoting McCormick on Evidence § 185 (E. Cleary 3d ed. 1984)). Accord *State v. Messersmith*, 238 Neb. 924, 473 N.W.2d 83 (1991). "To be relevant, evidence must be rationally related to an issue by a likelihood, not a mere possibility, of proving or disproving an issue to be decided." *State v. Lonnecker*, 237 Neb. 207, 210, 465 N.W.2d 737, 740-41 (1991). Accord, *State v. Lomack, ante* p. 368, 476 N.W.2d 237 (1991); *State v. Baltimore, supra.*

Coleman's imprisonment shortly before his arrest was neither material nor probative concerning the charge that Coleman possessed cocaine when he was arrested after the traffic stop. First, the fact of imprisonment is not an element of the possession charge against Coleman, see § 28-416(1), and, hence, was immaterial to the prosecution of Coleman. Second, we find nothing in the fact of incarceration which, by itself, makes it more likely that the individual, previously incarcerated and later found in proximity to a controlled substance, possessed the controlled substance. Moreover, the adverse effect of Lang's testimony is found in the reasonable possibility

that a jury might somehow consider Coleman's recent incarceration as an indication of his guilt. Consequently, evidence of Coleman's previous incarceration was irrelevant and should have been excluded.

*"Harmless Error" and "Overwhelming Evidence."*

"In a jury trial of a criminal case, whether an error in admitting or excluding evidence reaches a constitutional dimension or not, an erroneous evidential ruling results in prejudice to a defendant unless the State demonstrates that the error was harmless beyond a reasonable doubt." *State v. Cox,* 231 Neb. 495, 504, 437 N.W.2d 134, 140 (1989). Accord, *State v. Lonnecker, supra; State v. Messersmith, supra.* "Harmless error exists in a jury trial of a criminal case when there is some incorrect conduct by the trial court which, on review of the entire record, did not materially influence the jury in a verdict adverse to a substantial right of the defendant." *State v. Watkins,* 227 Neb. 677, 686, 419 N.W.2d 660, 666 (1988). Accord, *State v. Dixon,* 237 Neb. 630, 467 N.W.2d 397 (1991); *State v. Cox, supra.*

Lang's testimony was the only evidence on Coleman's incarceration. While it is true that evidence is accumulated in the course of a trial to determine a defendant's guilt, not all evidence is cumulative. "Cumulative evidence" means "tending to prove the same point to which other evidence has been offered." Webster's Third New International Dictionary, Unabridged 553 (1981). Therefore, Lang's testimony was not cumulative evidence concerning Coleman's incarceration.

In the trial of a criminal case, erroneous admission of evidence which is not cumulative may constitute harmless error beyond a reasonable doubt, when a defendant's conviction is supported by overwhelming evidence which has been properly admitted or admitted without objection. See *State v. Watkins, supra.* In contrast with the preceding, we have expressed the "harmless error" standard pertaining to erroneous admission of cumulative evidence: "Erroneous admission of evidence is harmless error and does not require reversal if the evidence erroneously admitted is cumulative and other relevant evidence, properly admitted, or admitted without objection,

supports the finding by the trier of fact." *State v. Cox, supra* at 504, 437 N.W.2d at 140. Accord, *State v. Messersmith, supra* (erroneous admission of cumulative evidence; no reversible error); *State v. Twohig*, 238 Neb. 92, 469 N.W.2d 344 (1991) (erroneous admission of cumulative evidence; no reversible error). For other Nebraska decisions reflecting the "overwhelming evidence" standard, which renders erroneously admitted noncumulative evidence "harmless beyond a reasonable doubt," see, *State v. Chapman*, 234 Neb. 369, 451 N.W.2d 263 (1990); *State v. Oliva*, 228 Neb. 185, 422 N.W.2d 53 (1988); *State v. Smith*, 218 Neb. 201, 352 N.W.2d 620 (1984); *State v. Weible*, 211 Neb. 174, 317 N.W.2d 920 (1982); *State v. Van Egmond*, 206 Neb. 356, 293 N.W.2d 74 (1980); and *State v. Stewart*, 197 Neb. 497, 250 N.W.2d 849 (1977). The "overwhelming evidence" standard in relation to "harmless error" has been adopted by several jurisdictions other than Nebraska; for example, *Justice v. State*, 775 P.2d 1002 (Wyo. 1989); *Jones v. State*, 536 N.E.2d 267 (Ind. 1989); *State v. Lafferty*, 749 P.2d 1239 (Utah 1988); *State v. DePew*, 38 Ohio St. 3d 275, 528 N.E.2d 542 (1988); *Com. v. Bricker*, 378 Pa. Super. 265, 548 A.2d 604 (1988); *People v. Rodgers*, 756 P.2d 980 (Colo. 1988); *U.S. v. Moore*, 872 F.2d 251 (8th Cir. 1989); *U.S. v. Gonzalez*, 833 F.2d 1464 (11th Cir. 1987); and *United States v. Ackerman*, 704 F.2d 1344 (5th Cir. 1983).

Although Lang's testimony concerning Coleman's statement about previous incarceration was irrelevant and, therefore, should have been excluded, there was other evidence before the jury, admitted without objection or properly admitted over objection, which tended to establish Coleman's guilt, such as the circumstances surrounding Coleman's arrest during the traffic stop and his statements. For example, Coleman acknowledged that he was a "user" of cocaine; had purchased the crack cocaine discovered during the traffic stop; and, regarding that cocaine, was going to use it, since "it was a new thing to do." Anthony Coleman, as the only occupant of the back seat in the Buick, had easy access to the back seat ashtray where the crack cocaine was found, became frightened at the police traffic stop, and put the cocaine in the Buick's ashtray on the back of the passenger seat immediately in front of himself.

Additionally, Coleman "fessed up" to the fact that he was the person in possession of the cocaine discovered during the traffic stop because he did not want to get Branch and his nephew "in trouble." Any prejudice which might have resulted from Lang's testimony regarding Coleman's previous incarceration shortly before his arrest on November 29, 1989, pales by comparison with the damaging effect and, therefore, prejudice to Coleman's case as the result of his incriminating statements and the circumstances of his arrest. We conclude that the overwhelming evidence in Coleman's case renders the erroneous admission of Lang's testimony about Coleman's previous incarceration "harmless beyond a reasonable doubt." Consequently, admission of Lang's testimony in question does not require reversal of Coleman's conviction.

We note the proposition expressed in the State's brief: "The court's determination regarding admissability will not be set aside absent an abuse of discretion." Brief for appellee at 18. We direct the State to the recent decision *State v. Messersmith*, 238 Neb. 924, 936, 473 N.W.2d 83, 92 (1991), wherein we expressly disapproved the expression " 'The admission or exclusion of evidence is a matter within the discretion of the trial court.' " For that reason, we also reject the proposition expressed by the State in Coleman's case regarding our review of a trial court's ruling on admissibility of evidence.

Finally, we must comment on the district court's remark when the court denied Coleman's motion in limine "with the understanding [Coleman] is going to testify. Should that status change, then I might change my mind on the motion in limine also."

Neb. Evid. R. 104(2), Neb. Rev. Stat. § 27-104(2) (Reissue 1989), states: "When the relevancy of evidence depends upon the fulfillment of a condition of fact, the judge shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition." Admissibility of Coleman's previous incarceration did not involve a factual question for conditional admissibility within the purview of Rule 104(2), that is, evidence of incarceration would not somehow be rendered inadmissible if Coleman did not testify in his trial; rather, Coleman's motion in limine to

exclude Lang's testimony about Coleman's previous incarceration and the eventual ruling on admissibility of that evidence in Coleman's trial were matters of law generally for the court's consideration unaffected by the possibility of Coleman's testifying or not testifying at trial. In situations such as that presented in Coleman's case, a trial court should rule on a motion in limine irrespective of anticipation that a defendant will testify or likelihood that a defendant may testify. Coleman's motion in limine stood on its own merits without reference to the possibility or likelihood of his testifying at trial.

Since Coleman's assignments of error are without merit, we affirm Coleman's conviction.

AFFIRMED.