STATE OF NEBRASKA, APPELLEE, v. ROGER A. OBERMIER, APPELLANT.

490 N.W.2d 693

Filed October 30, 1992.    No. S-90-1020.

Joseph H. Murray, of Germer, Murray & Johnson, for appellant.

Charles W. Campbell, Deputy York City Attorney, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

PER CURIAM.

After a trial to the county court, the defendant, Roger A. Obermier, was convicted of driving while under the influence of alcoholic liquor, second offense, and was fined $500, was sentenced to 30 days in jail, and had his license revoked for 1 year. Upon appeal to the district court, the judgment was affirmed.

In this appeal, the defendant contends that the trial court erred in overruling his motion to suppress and in admitting over objection the results of his breath test.

The record shows that shortly after midnight on September 17, 1989, the defendant went to the York Police Department and reported that someone had stolen his pickup truck. He told Officers Scott Jedlicka and Robert Holmes that he had parked his truck in a parking lot at 5th Street and Platte Avenue in York, Nebraska, across from the Chances R restaurant and

lounge, and that when he came out of the lounge he discovered his truck was gone. The defendant was convinced that someone had stolen his truck because he was sure he had parked it in the parking lot.

The defendant also told the officers that he had been in the Chances R lounge, where a dance was being held, and that he had been drinking. Officer Jedlicka observed that the defendant had a fairly strong odor of alcoholic beverage about him, that his face was flushed and his eyes were bloodshot, and that he stuttered somewhat.

Officers Jedlicka and Holmes then left the police station to look for the defendant's truck, and they found it parked in the middle of the block on 6th Street.

When the officers returned to the police station, they were again advised by the defendant that he was positive he had left his truck in the parking lot at 5th and Platte. When the officers told the defendant where they had found his truck, he appeared to recall that he had parked the truck where the officers found it.

Officer Holmes then told the defendant that he was not to drive due to his consumption of alcohol and the condition that he was in, and he was offered a ride home. The defendant agreed to this instruction and said he would walk to his home, which was located one-half block from the police station.

Officer Jedlicka testified that in his opinion, the defendant was intoxicated.

Sgt. Norm Cobb was also present at the police station at the time the defendant reported his truck stolen, and he observed the conversation between the officers and the defendant after the officers had located the defendant's truck and returned to the police station. Sergeant Cobb was aware that the defendant had indicated he was going to return to his vehicle and that the officers had instructed him not to do so because he had had too much to drink to be driving. Sergeant Cobb also understood that the officers had offered the defendant a ride and that the defendant had refused the offer and walked home instead. Sergeant Cobb heard the officers warn the defendant not to drive because he would be arrested for driving while intoxicated.

Sergeant Cobb noted that the defendant's face appeared to be flushed and that his eyes were bloodshot and watery. He also noticed that the defendant's movements at times seemed a little unsteady and that his speech was slightly slurred.

Approximately 30 minutes after the defendant had left the police station, Sergeant Cobb left the station to resume patrol. As he drove south on Platte Avenue, Sergeant Cobb observed a pickup truck proceeding eastbound near the intersection of 6th Street and Platte Avenue. As the truck approached the intersection, Sergeant Cobb saw the truck stop at the stop sign. The driver then covered his face with his hands and turned away from the officer.

Sergeant Cobb continued south on Platte Avenue, passed directly in front of the truck, and then turned into the parking lot. The defendant then backed his truck, pulled into a diagonal parking stall, and slumped over the steering wheel. Sergeant Cobb spoke with the defendant, who indicated he was disgusted with himself. Sergeant Cobb again observed that the defendant's face was flushed and that his eyes were watery and bloodshot. He also noticed a strong odor of alcohol about the defendant's person. The defendant was unsteady while presenting his driver's license, and Sergeant Cobb noticed that when he got out of his truck his balance was unsteady.

Sergeant Cobb arrested the defendant for driving while under the influence of alcoholic liquor and took him to the police station, where field sobriety tests were conducted.

A breath test conducted by Sergeant Cobb at the York County sheriff's office showed that the defendant had a concentration of .151 of 1 gram of alcohol per 210 liters of his breath.

Before trial the defendant filed a motion to suppress the results of the breath test. That motion was overruled. At the trial, the results of the breath test were admitted over the defendant's objection as to foundation. The county court found the defendant guilty of driving while under the influence of alcoholic liquor and, after an enhancement hearing, found that it was the defendant's second offense.

In support of his assignment of error, the defendant relies on *State v. Gerber*, 206 Neb. 75, 291 N.W.2d 403 (1980), and

argues that the breath test results should not have been admitted into evidence because the State did not produce a copy of Sergeant Cobb's "Class B permit" authorizing him to operate the Intoxilyzer to administer the breath test.

As foundation for introducing the evidence of the breath test results, Sergeant Cobb testified, over the defendant's objection that it was not the best evidence, that he had a Class B permit to operate the Intoxilyzer and that the permit had not been revoked and had not expired or lapsed. The county court overruled the defendant's objection.

It is not necessary for the State to introduce into evidence the actual or a certified copy of an individual's state Department of Health permit to perform a blood, breath, or urine test of a suspect arrested for driving while under the influence of alcoholic liquor. Neither *State v. Gerber, supra,* nor Neb. Rev. Stat. § 39-669.11 (Reissue 1988) sets forth such a requirement. Any suggestion to the contrary in either *Gerber* or *State v. Kolar,* 206 Neb. 619, 294 N.W.2d 350 (1980), is overruled. In *Kolar,* a

> deputy testified that he held a valid permit authorizing him to use the type of equipment which, in fact, was used to administer the breath test on appellant. He did not, however, produce any evidence of that permit at trial but rather advised the court that the permit "was at the office."

*Id.* at 624, 294 N.W.2d at 353. As we held in *State v. West,* 217 Neb. 389, 394, 350 N.W.2d 512, 517 (1984), "A certificate is merely *one of the methods* whereby the fact that a permit has been issued can be determined." (Emphasis supplied.) It is sufficient if there is relevant admissible evidence that the individual performing the test did, at the time of the test, possess a valid permit for such purpose.

The courts of this state routinely permit expert witnesses such as doctors, engineers, lawyers, scientists, law enforcement officers, and other experts to testify as to their educational backgrounds qualifying them as experts in a particular field, and of their licensure if such is a requirement to practice a particular profession or trade, without producing the actual or a certified copy of educational degrees or licenses. Law

enforcement officers are routinely permitted to testify as to their status as law enforcement officers without producing their commissions. A court-imposed rule that a person holding a valid permit to perform blood, breath, or urine tests should be singled out to produce a permit to perform a test before the holder is permitted to give evidence of the test cannot be justified. The fact that a person is under oath, subject to the penalties of perjury, and undoubtedly would lose his or her job for committing perjury is a sufficient safeguard to deter such a person from lying about whether the person has a permit to perform a blood, breath, or urine test.

The trial court in Obermier's case properly overruled the defendant's best evidence objection to Sergeant Cobb's testifying that he held a Class B permit to operate an Intoxilyzer and that the permit had not been revoked and had not expired or lapsed. Sergeant Cobb did not testify to the *contents* of a written instrument, but only that he held a Class B permit. The best evidence rule applies only if the party offering the evidence is seeking to prove the *contents* of a writing. See *Jackson v. Crews*, 873 F.2d 1105 (8th Cir. 1989). Rule 1002 of the Federal Rules of Evidence is substantially identical to Neb. Evid. R. 1002. See, also, Neb. Evid. R. 1002 cmt. (Tentative Draft 1973).

At Obermier's trial, the issue was not the contents of Sergeant Cobb's permit to conduct a breath test upon the defendant, but whether the officer was qualified and authorized to conduct such tests. Sergeant Cobb's qualifications and authority to conduct a breath test on the defendant existed independent of his permit. At the defendant's trial, Sergeant Cobb's permit could be used only as evidence of the officer's qualifications and authority to conduct such a test. Therefore, as held in *People v. Pelc*, 177 Ill. App. 3d 737, 532 N.E.2d 552 (1988), the best evidence rule did not apply to Sergeant Cobb's testimony concerning his qualifications and authority to conduct a breath test upon the defendant. The officer's testimony in that regard was properly admitted, and therefore, the judgment of the district court, affirming the judgment of the county court, is affirmed.

AFFIRMED.

SHANAHAN, J., concurring.

While the majority properly dispels the mistaken notion that an expert, or other witness to whom the State has issued a certificate or license, must, prefatory to testifying, have presented to a trial court documentation reflecting the witness' field of expertise or specialization, the majority superficially treats Obermier's "best evidence" objection and gives short shrift, actually no shrift at all, to Obermier's "foundation" objection under the Nebraska Evidence Rules.

The State's complaint contained the alternative allegations that Obermier did "operate or have actual physical control of a motor vehicle while under the influence of alcoholic liquor," or "when he had a concentration of ten-hundredths of one gram or more by weight of alcohol per two hundred ten liters of his breath." Police officers, after testifying about their observations of Obermier, expressed opinions that Obermier was under the influence of alcohol while he was driving his truck. There was extensive testimony that the "Intoxilyzer" was properly functioning before and during the breath test administered to Obermier in accordance with state regulations governing the procedure for proper administration of an Intoxilyzer test. Sgt. Paul Vrbka of the York County Sheriff's Department testified that he held certificates issued by the Nebraska Department of Health; one certificate authorized Vrbka's maintenance of the Intoxilyzer used in the Obermier test, while the other certificate, a "Class B permit," authorized Vrbka to operate the Intoxilyzer. Vrbka detailed his maintenance on the Intoxilyzer and the machine's accuracy. Copies of the state regulations specifying the classes of permits, including a Class B permit, to operate breath-testing equipment and the methods for conducting a valid test were received in evidence.

In the direct examination of Sergeant Cobb, a member of the York Police Department and the operator of the Intoxilyzer described by Vrbka which was used for the breath test on Obermier, the following occurred:

Q. . . . [A]re you certified to operate the intoxilyzer?
A. Yes, sir. I am.
Q. And when did you become certified?

A. I was . . .

[Obermier's lawyer:] Objection. Not the best evidence. . . .

. . . .

. . . The witness is test — is testifying as to a writing, a public record. I don't believe he can — he can testify as to the contents of that writing unless he complies with 27-1004.

. . . .

THE COURT: . . . I believe he can testify as to the date. You may answer.

A. It was December 22nd of 1984.

When asked "what kind of certificate" he held, Cobb, over Obermier's best evidence objection, testified that his certificate was a "Class B permit," the same type of certificate held by Sergeant Vrbka.

Later in the State's case in chief, without objection, Cobb testified that he observed "the reading" on the Intoxilyzer during Obermier's test, and he was then asked:

Q. And what reading appeared on the intoxilyzer when Mr. . . .

[Obermier's lawyer:] Objection. Foundation.

Q. [State's attorney:] . . . when Mr. Obermeier [sic] produced the breath sample?

. . . .

THE COURT: The Court would overrule. You may answer.

A. It was a .151.

Q. . . . 151 what?

A. Of a gram of alcohol per two ten liters of breath.

In view of Obermier's objections to the preceding excerpts from Sergeant Cobb's testimony, Obermier claims that the trial court erred by admitting "the results of defendant's breath test into evidence at trial, over objection, due to lack of foundation being established for such evidence." Later in his brief Obermier argues that

the State failed to prove that the officer administering the breath test was qualified to do so and held a valid permit. Officer Cobb, the testing officer, was permitted to testify

to holding a Class B permit on the date in question. The permit itself or a copy thereof was never offered or received in evidence. Defendant submits that the original or a certified copy of said certificate was required to evidence Officer Cobb's qualifications and that other evidence as to the contents of such certificate (such as Officer Cobb's oral testimony) was inadmissible under Section 27-1004, Nebraska R.R.S.

Brief for appellant at 13.

Neb. Evid. R. 1002 states:

> To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by Act of Congress or of the Legislature of the State of Nebraska or by other rules adopted by the Supreme Court of Nebraska.

· Under Rule 1002, to prove material contents of a writing, the original writing must be produced unless that writing is unavailable for some reason other than the proponent's fault—for instance, unavailability due to loss of the writing or the writing's destruction. See Neb. Evid. R. 1004 (admissibility of other evidence concerning contents of a writing). See, also, *Proffitt v. Ricci*, 463 A.2d 514 (R.I. 1983); *Williams v. State*, 386 So. 2d 538 (Fla. 1980).

As we recently stated in *Equitable Life v. Starr*, 241 Neb. 609, 615-16, 489 N.W.2d 857, 862 (1992):

> Thus, the original writing or "original document" rule, expressed in Rule 1002, does not set up a hierarchy for admissibility of evidence, but applies when a party seeks to prove material contents of a writing, recording, or photograph. See, *United States v. Gonzales-Benitez*, 537 F.2d 1051 (9th Cir. 1976); *State v. Lang*, 354 N.W.2d 723 (S.D. 1984); *State v. Stramiello*, 392 So. 2d 425 (La. 1980); *Mitchell v. State*, 84 Wis. 2d 325, 267 N.W.2d 349 (1978). The purpose of Rule 1002 is the prevention of fraud, inaccuracy, mistake, or mistransmission of critical facts contained in a writing, recording, or photograph when its contents are an issue in a proceeding. See, *U.S. v. Yamin*, 868 F.2d 130 (5th Cir. 1989) (original document rule

prevents inaccuracy and fraud in an attempt to prove the contents of a writing); *Williams v. State*, 386 So. 2d 538 (Fla. 1980) (original document rule ensures accuracy in proof of a document's critical contents); *Proffitt v. Ricci*, 463 A.2d 514 (R.I. 1983) (in the absence of a satisfactory explanation for nonproduction of an original document, the original document rule bars admission of secondary evidence to prove the contents of the document); *Crosson v. State*, 268 Ind. 511, 376 N.E.2d 1136 (1978) (original document rule excludes testimony concerning the contents of a document when the document itself is available for examination by the trier of fact). See, also, 2 McCormick on Evidence § 231 (John W. Strong 4th ed. 1992).

In Obermier's case, Sergeant Cobb testified without objection that he held a Nebraska Department of Health certificate to operate the Intoxilyzer used in the test on Obermier. Thus, Obermier's first best evidence objection was directed to information concerning the date on which Cobb's certificate was issued and did not relate to the certificate's contents as a material issue in the case, while Obermier's second best evidence objection pertained to Cobb's identifying a particular category or type of license issued to him by the Nebraska Department of Health. Neither of Cobb's answers, received over Obermier's best evidence objections, was testimony to prove the contents of the certificate or permit as a written expression of Cobb's qualifications and the authorization extended by the State to operate an Intoxilyzer. Rather, Cobb's qualifications and authority from the State to operate the Intoxilyzer existed outside and independent of the Class B permit as a document issued to Cobb. Proof of Cobb's authorization to conduct an Intoxilyzer test and, consequently, his qualification to operate the machine was supplied by Cobb's affirmation that he was "certified to operate the Intoxilyzer" in light of state regulations received in evidence. Consequently, the court correctly overruled Obermier's best evidence objections to the questions asked Cobb and to his answers, since the State was not attempting to prove the contents of an original writing.

Next, Obermier claims that the trial court erred by admitting into evidence, over Obermier's foundation objection, Cobb's

testimony that the digital reading on the administered Intoxilyzer test was ".151."

An appellant claiming reversible error as the result of admission of evidence must have made a timely objection, stating the specific ground of objection, if a specific ground was not apparent from the context. See Neb. Evid. R. 103(1)(a). See, also, *State v. Coleman*, 239 Neb. 800, 478 N.W.2d 349 (1992). "One function of a proper objection is to direct the court's attention to questioned admissibility of particular evidence so that the court may intelligently, quickly, and correctly rule on the reception or exclusion of evidence." *Id.* at 812, 478 N.W.2d at 357. "[A]n objection on the ground of insufficient foundation is a general objection." *Sherard v. Bethphage Mission, Inc.*, 236 Neb. 900, 911, 464 N.W.2d 343, 350 (1991). See, *Brown v. Farmers Mut. Ins. Co.*, 237 Neb. 855, 468 N.W.2d 105 (1991); *Kennedy v. Woods*, 131 Neb. 217, 267 N.W. 390 (1936). As we observed in *Sherard v. Bethphage Mission, Inc., supra*:

> "The objection 'lack of foundation' is employed at trial in reference to many different situations." M. Graham, Handbook of Federal Evidence § 611.9 at 528 (2d ed. 1986). "If a general objection is overruled the objecting party may not complain on appeal unless: (1) The ground for exclusion was obvious without stating it, or (2) the evidence was not admissible for any purpose." *Gateway Bank v. Department of Banking*, 192 Neb. 109, 112, 219 N.W.2d 211, 213 (1974).

236 Neb. at 911, 464 N.W.2d at 350.

Did Obermier's foundation objection challenge Sergeant Cobb's competency to testify about the digital reading on the Intoxilyzer—for instance, Cobb's inability to observe the digital display on the Intoxilyzer? Was the foundation objection a challenge to the reliability or accuracy of the Intoxilyzer as a measuring device? Did the objection raise a question about validity of procedures for an Intoxilyzer test generally, or, specifically, the validity of the particular procedures employed in the Intoxilyzer test administered to Obermier? Or, did the objection pose the question whether the Intoxilyzer was properly functioning during the test on Obermier? Under the

circumstances, the record does not present an obvious ground apparent from the context of Obermier's foundation objection. Moreover, Cobb's testimony concerning the reading on the Intoxilyzer was relevant to the charge that Obermier was operating a motor vehicle while he "had a concentration of ten-hundredths of one gram or more by weight of alcohol per two hundred ten liters of his breath." Consequently, the trial court properly overruled Obermier's foundation objection as a general objection.

Since the trial court was correct in overruling Obermier's best evidence and foundation objections, there is no merit to Obermier's assignment of error concerning admissibility of evidence under the Nebraska Evidence Rules. Also, quite apart from evidence derived through the Intoxilyzer test, there was ample relevant evidence on the question whether Obermier was drunk or intoxicated while he was driving his truck, that is, whether Obermier was under the influence of an alcoholic beverage when he operated a motor vehicle. For that reason, Obermier's conviction must be affirmed.